## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

TRINITY SERVICES GROUP, INC.,          :
                                       :
      Plaintiff,          :
v.          :          CIVIL ACTION
                                         :          FILE NO. 2020CV337179
CITY OF ATLANTA, GEORGIA,          :
                                         :
      Defendant.          :

## COMPLAINT

COMES NOW Trinity Services Group, Inc. ("**Trinity**" or "**Plaintiff**") and files this Complaint (the "**Complaint**") against the City of Atlanta, Georgia ("**City of Atlanta**" or "**Defendant**"), showing the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Trinity is a corporation registered under the laws of Florida with an office located at 477 Commerce Boulevard, Oldsmar, FL 34677.

2.      At all times relevant hereto, the services provided by Trinity were rendered for the City of Atlanta Detention Center located at 265 Peachtree Street, Atlanta, Georgia 30303 in Fulton County, Georgia and the benefit of the Defendant (the "**City of Atlanta Detention Center**").

3.      The transactions set forth herein arose in Fulton County, Georgia and are based on services rendered by Trinity in Fulton County, Georgia for the benefit of the Defendant.

4.      Defendant City of Atlanta is a municipality formed and existing under the laws of the State of Georgia and located wholly or partially within the boundaries of Fulton County.

5.      Pursuant to paragraph 18.3 of the Services Agreement (as defined herein), both Trinity and the City of Atlanta submit and consent to the exclusive jurisdiction of the state courts of Fulton County or in the United States District Court for the Northern District of Georgia.

6.      The City of Atlanta is subject to the jurisdiction of this Court and may be served with process by serving the City Attorney Nina Hickson at City of Atlanta, Department of Law, 55 Trinity Avenue, Suite 5000, Atlanta, Georgia 30303.

7.      This Court has jurisdiction over this Complaint and all parties and matters in this action.

8.      Venue properly rests in Fulton County, Georgia.

## FACTUAL BACKGROUND

**A.      Services Agreement for the City of Atlanta Detention Center**

9.      Trinity provides meal programs to facilities operating in the corrections industry.

10.      Pursuant to a Contract Agreement for FC-5441 Food Services for Atlanta Detention Center, the City of Atlanta and Trinity entered a certain services agreement effective December 18, 2012 (the "**Services Agreement**"), pursuant to which Trinity would provide certain meal program services to the City of Atlanta Detention Center for the benefit of the Defendant. A copy of the Services Agreement is attached as **Exhibit A** hereto and incorporated herein by reference.

11.      Trinity provided food services to the City of Atlanta Detention Center for the benefit of the Defendant pursuant to the Services Agreement and issued an invoice to the City of Atlanta for such services on a regular basis.

12.      Paragraph, 2.2 of the Services Agreement provides a procedure for renewing the agreement for two (2) additional one year terms. *See* Services Agreement, ¶ 2.2.

13.     The Services Agreement was renewed to extend the term of the Services Agreement through March 16, 2017, as indicated in correspondence from the City of Atlanta dated April 19, 2016 (the "**First Renewal**").  A copy of the First Renewal is attached as **Exhibit B** hereto and incorporated herein by reference.

14.     Pursuant to correspondence from Trinity to the City of Atlanta dated April 26, 2016, Trinity notified the City of Atlanta that communications to Trinity should be sent to a specified address in Florida rather than the address in Georgia that was previously utilized by Trinity for the Services Agreement.

15.     The Services Agreement was renewed for a second time to extend the term through March 16, 2018, as indicated in correspondence from the City of Atlanta dated January 26, 2017 (the "**Second Renewal**").  A copy of the Second Renewal is attached as **Exhibit C** hereto and incorporated herein by reference.

16.     Pursuant to correspondence from Trinity to the City of Atlanta dated February 20, 2017, Trinity requested a price adjustment related to services rendered pursuant to the Services Agreement ("**Price Adjustment**").  A copy of the Price Adjustment is attached as **Exhibit D** hereto and incorporated herein by reference.

**B.      Interim Extension and Continued Food Services by Trinity**

17.     Pursuant to correspondence from Trinity to the City of Atlanta dated February 12, 2018, Trinity noted that the Services Agreement was set to expire on March 17, 2018, and proposed an extension of the Services Agreement to allow Trinity to continue to render services on a month to month basis pending the completion of the new proposal process by the City of Atlanta (the "**Month to Month Extension**").  A copy of the Month to Month Extension is attached as **Exhibit E** hereto and incorporated herein by reference.

18.     The City of Atlanta did not reject or object to the Month to Month Extension or discuss with Trinity any transition plan for a vendor other than Trinity after receiving the Month to Month Extension.

19.     The City of Atlanta did not ask Trinity to terminate services on March 17, 2018.

20.     The Defendant induced or encouraged the Plaintiff to continue to provide Food Services after March 17, 2018.

21.     After March 17, 2018, Trinity continued to provide food services (the "**Food Services**") to the City of Atlanta Detention Center for the benefit of the Defendant pursuant to the Services Agreement as modified by the Month to Month Extension.

22.     After March 17, 2018, the City of Atlanta did not ask Trinity to stop the Food Services and made no effort to stop Trinity from continuing to provide the Food Services. Instead, the City of Atlanta encouraged Trinity to continue to provide the Food Services and the City of Atlanta continued to accept such services.

23.     After March 17, 2018, Trinity was admitted to the City of Atlanta Detention Center for the sole purpose of rendering the Food Services without objection by the City of Atlanta.

24.     After March 17, 2018, the City of Atlanta continued to accept the Food Services without objection or qualification for the benefit of the Defendant.

25.     After March 17, 2018, the Food Services provided by Trinity were critical to the safe and lawful operation of the City of Atlanta Detention Center.

26.     After March 17, 2018, the Defendant did not make any alternative arrangements to feed persons detained at the City of Atlanta Detention Center and relied solely upon Trinity for the Food Services.

27.     After March 17, 2018, Trinity supplied Food Services to the City of Atlanta Detention Center for the benefit of the Defendant on open account (the "**Account**") and continued to send monthly invoices to the City of Atlanta for the Food Services. The terms of such invoices were on substantially the same terms as the Services Agreement as modified by the Month to Month Extension. A copy of the invoices from Trinity to the City of Atlanta for Food Services rendered from March, 2018, through September, 2018 are attached as **Exhibit F** hereto and incorporated herein by reference.

28.     Pursuant to the invoices sent by Trinity and the prior course of conduct between Trinity and the City of Atlanta, the City of Atlanta was on notice that Trinity was charging for the Food Services.

29.     Upon information and belief, the City of Atlanta had no expectation that the Food Services were being provided by Trinity free of charge.

30.     Pursuant to the accounting records of the Plaintiff, the outstanding balance of the Account as of the date of this Complaint equals the amount of $212,856.78, plus applicable fees, costs, and expenses (the "**Account Indebtedness**") and is matured, due, and payable.

31.     The details of the Account and the Account Indebtedness as of the date of this Complaint are further provided on the account statement attached as **Exhibit G** to this Complaint and incorporated by reference.

32.     After March 17, 2018, the City of Atlanta was aware that the Trinity was providing the Food Services.

33.     After March 17, 2018, the City of Atlanta was aware that there were costs and expenses associated with the Food Services.

34. Based on the monthly invoices from Trinity, the City of Atlanta was aware of the cost that Trinity was charging for the Food Services.

35. After March 17, 2018, the City of Atlanta: a) was aware that the City of Atlanta Detention Center was receiving the Food Services; b) made no effort to stop the Food Services that the City of Atlanta knew were being provided by Trinity;  c) never questioned or disputed the rate being charged by Trinity for the Food Services; and d) required Trinity's Food Services in order to operate the City of Atlanta Detention Center in accordance with applicable City, State and Federal laws and regulations.

**C.     Collection Efforts by Trinity**

36. Trinity made numerous attempts to collect the amount due by the City of Atlanta without proceeding to litigation. Although the City of Atlanta made partial payments of amounts due, $212,856.78 remains due and owing to the Trinity.

37.  As of the date of this Complaint, Defendant has failed to: a) remit full payment for the Food Services; or b) provide any documentation to justify the retention of any amount due by the Defendant.

**D.     Reservation**

38. The Plaintiff reserves the right to amend or supplement this original Complaint to include: a) further information; b) modifications of and/or revision to the name of the Defendant; c) additional defendants; and/or d) additional causes of action that may become known to Plaintiff at any time during this proceeding, through formal discovery or otherwise. Any amendments to this Complaint shall relate back to this original Complaint.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

39.     The Plaintiff repeats, alleges and incorporates by reference the allegations contained in Paragraphs 1 through 38 of this Complaint as though fully set forth in this cause of action.

40.     The Plaintiff and the Defendant entered into a contract for food service at the City of Atlanta Detention Center.

41.     By encouraging Trinity to continue to provide the Food Services after March 17, 2018, continuing to accept the Food Services with knowledge of the invoices sent by Trinity, and failing to stop Trinity from rendering the Food Services, an oral or implied contract requires the City of Atlanta to pay amounts invoiced by Trinity, together with interest thereon.

42.     Plaintiff has performed all of its obligations to the Defendant under the terms of the agreement between the Plaintiff and the Defendant.

43.     Pursuant to the monthly invoices provided by the Plaintiff, the Defendant was fully aware of the cost of the Plaintiff rendering the Food Services.

44.     Defendant has failed or refused to pay all costs and expenses related to the Food Services provided by Trinity.

45.     Defendant breached its contract with the Plaintiff in failing to pay costs and expenses related to the Food Services.

46.     As a result of the breach of contract by the Defendant, the Plaintiff has suffered damages of at least $212,856.78 and incurred costs, expenses, and attorney's fees.

47.     The unpaid balance of the Account is $212,856.78 plus costs, expenses, and fees.

48.     Plaintiff is entitled to recover damages, costs, expenses, and attorney's fees from Defendant arising from the breach of contract by the Defendant.

## SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

49.     The Plaintiff repeats, alleges and incorporates by reference the allegations contained in Paragraphs 1 through 48 of this Complaint as though fully set forth in this cause of action.

50.     "The implied covenant of good faith and fair dealing in performing a contract has a basis in both statutory and common law." *Thakkar v. Bay Point Capital Partners, LP*, No. AP 17-5248-WLH, 2018 WL 400728, at *3 (Bankr. N.D. Ga. Jan. 12, 2018) (noting that "a duty of good faith in performance for contracts governed thereunder, and there is a general statutory requirement to perform substantially within the spirit and letter of a contract").

51.     In bad faith, the Defendant knowingly induced Trinity to continue to provide the Food Services without providing for the payment of such services.

52.     In bad faith, the Defendant failed to pay for the Food Services by the Plaintiff that the Defendant knowingly caused Trinity provide for the benefit of the Defendant.

53.     In bad faith, the Defendant accepted the Food Services from Trinity without providing appropriate compensation for such services to the Plaintiff.

54.     Because of the bad faith of the Defendant, Plaintiff has sustained damages of at least $212,856.78 and incurred costs, expenses, and attorney's fees.

55.     The Plaintiff is entitled to recover damages, costs, expenses, and attorney's fees from Defendant arising from the breach by Defendant of the implied covenant of good faith and fair dealing.

## THIRD CAUSE OF ACTION
### (Account Stated or Open Account)

56.     The Plaintiff repeats, alleges and incorporates by reference the allegations contained in Paragraphs 1 through 55 of this Complaint as though fully set forth in this cause of action.

57.     After March 17, 2018, and the date of the filing of this Complaint, the Defendant became indebted to the Plaintiff on an open Account for money due in the amount of $212,856.78, plus costs, fees, and expenses, pursuant to written invoices sent to the Defendant.

58.     The sum of $212,856.78, which is the reasonable value for the Food Services provided by the Plaintiff, is due and unpaid despite demand by the Plaintiff, plus interest, costs, expenses, and attorney's fees.

59.     The balance of the Account as of the date of the Complaint is matured and due to the Plaintiff.

60.     The Plaintiff has a right to be paid the full amount of the Account Indebtedness and is otherwise entitled to receive the full amount due under the Account, including interest, costs, and expenses.

61.     Based on the foregoing, the Account Indebtedness, plus costs, fees, and interest, is an obligation of the Defendant due to the Plaintiff.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment and Quantum Meruit)

62.     In seeking alternative relief, the Plaintiff repeats, alleges and incorporates by reference the allegations contained in Paragraphs 1 through 38 of this Complaint as though fully set forth in this cause of action.

63.     The Defendant induced or encouraged the Plaintiff to continue to provide the Food Services.

64.     The Plaintiff conferred benefit to the Defendant by virtue of the Food Services by the Plaintiff that would result in unjust enrichment by the Defendant unless the Plaintiff is compensated.

65.     The Plaintiff provided such benefit to the Defendant with the reasonable expectation that the Defendant would be responsible for the cost thereof.

66.     The Defendant was aware of the Food Services by the Plaintiff and has knowledge of the benefit provided by the Plaintiff.

67.     The Defendant voluntarily accepted and retained the benefit conferred by the Plaintiff and either affirmatively chose to accept the benefit from the Plaintiff or failed to reject it.

68.     The Plaintiff has not been compensated for the benefit to the Defendant by virtue of the Food Services by the Plaintiff.

69.     The failure of the Plaintiff to receive compensation for the benefit to the Defendant by virtue of the Food Services by the Plaintiff renders the transaction unjust.

70.     As a result of the conduct described herein, the Defendant has been unjustly enriched at the expense of the Plaintiff.

71.     The Defendant's receipt of the benefit of the services of the Plaintiff unjustly enriched the Defendant to the detriment of the Plaintiff.

72.     Under the circumstances, it would be inequitable for the Defendant to retain such benefit without reasonable compensation to the Plaintiff.

73.     Accordingly, as alternative relief, Defendant should be required to compensate the Plaintiff for the benefit that Defendant or its related entities have obtained or will unjustly obtain in the future at the expense of the Plaintiff and a constructive trust should be imposed thereon for the benefit of the Plaintiff.

## FIFTH CAUSE OF ACTION
### (Attorney's Fees – O.C.G.A. § 13-6-11)

74.     The Plaintiff repeats, alleges and incorporates by reference the allegations contained in Paragraphs 1 through 73 of this Complaint as though fully set forth in this cause of action.

75.     The Plaintiff is entitled to the reimbursement of attorneys' fees and expenses from the Defendant, pursuant to O.C.G.A. § 13-6-11, because the Defendant has acted in bad faith, has been stubbornly litigious, and has caused the Plaintiff unnecessary trouble and expense.

## SIXTH CAUSE OF ACTION
### (General Equitable Relief)

76.     The Plaintiff repeats, alleges and incorporates by reference the allegations contained in Paragraphs 1 through 75 of this Complaint as though fully set forth in this cause of action.

77.     The Defendant has failed to provide Plaintiff with appropriate compensation for the Food Services.

78.     As a matter of equity, the Plaintiff should be allowed to recover from the Defendant the reasonable, necessary costs and expenses of the Food Services.

79.     Based on the foregoing, the costs, expenses and debts incurred by the Plaintiff in connection with the Food Services should be charged against the Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully demands a trial by jury and prays that the Court enter a judgment in favor of the Plaintiff and requests that the Court enter an order that:

A.      on the First Cause of Action, determines that: i) the Defendant breached its contract with the Plaintiff; and ii) the Plaintiff is entitled to recover damages, costs, expenses, prejudgment interest at the highest rate allowed by law and attorney's fees from Defendant arising from the breach of contract by the Defendant as may be determined at trial;

B.      on the Second Cause of Action, determines that: i) the Defendant acted in bad faith and breached the implied covenant of good faith and fair dealing; and ii) the Plaintiff is entitled to recover damages, costs, expenses, prejudgment interest at the highest rate allowed by law and attorney's fees from Defendant arising from such conduct as may be determined at trial;

C.      on the Third Cause of Action, renders judgment against the Defendant for an unpaid account stated or open account in the amount of the Account Indebtedness of $212,856.78, as of the date of the filing of the Complaint, plus prejudgment interest at the highest rate allowed by law, post-judgment interest at the maximum legal rate until the judgment is paid in full, and the costs of the Plaintiff related to this Complaint;

D.      determines that Account Indebtedness is matured and due to the Plaintiff, the Plaintiff has a right to be paid the full amount of the Account Indebtedness, and the Plaintiff is otherwise entitled to receive the full amount of the Account Indebtedness from the Defendant;

E.      on the Fourth Cause of Action, in the alternative, determines that the Defendant was unjustly enriched by the Food Services, it would be inequitable for the Defendant to retain such benefit without reasonable compensation to the Plaintiff, and Defendant should be required to compensate the Plaintiff for the benefit that Defendant or its related entities have obtained or

will unjustly obtain in the future at the expense of the Plaintiff;

F.      on the Fifth Cause of Action, determines that the Plaintiff is entitled to reimbursement of attorneys' fees and expenses from the Defendant;

G.      on the Sixth Cause of Action, determines that the Plaintiff is entitled to general equitable relief to address the conduct by the Defendant;

H.      awards pre-judgment interest at the maximum legal rate running from the date of filing of the Complaint to the date of judgment herein;

I.      awards post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

J.      requires the Defendant to pay forthwith the judgment amount awarded in favor of Plaintiff; and

K.      grants Plaintiff such other and further legal or equitable relief as the Court deems just and proper.

Dated: May 13, 2020.

Respectfully submitted,

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

*Counsel for the Plaintiff*

## Exhibit A

# CONTRACT AGREEMENT
# FOR
# FC-5441
# FOOD SERVICES FOR ATLANTA DETENTION
# CENTER



Atlanta, Georgia

Kasim Reed
Mayor
City of Atlanta

Pat Labat
Interim Chief
Atlanta Detention Center

Adam L. Smith, Esq., CPPO, CPPB
Chief Procurement Officer
Department of Procurement

**SERVICES AGREEMENT; CONTRACT NO. FC-5441, FOOD SERVICES FOR
ATLANTA DETENTION CENTER**

This Services Agreement ("Agreement") is entered into and effective as of _____ (the "Effective Date") between the City of Atlanta ("City") and the service provider ("Service Provider") set forth below.

| Contract Name: Food Services for Atlanta Detention Center | Contract No. FC-5441 |
|---|---|
| Service Provider: Trinity Food Services | City of Atlanta |
| Name: | Using Agency: City of Atlanta Detention Center |
| Address: 3435 Kingsboro Rd., NE<br>Ste.1503<br>Atlanta, Georgia 30326 | Address: 265 Peachtree Street<br>Atlanta, Georgia 30303 |
| Phone: (404) 202-8101 | Phone: (404) 865-8063 |
| Fax: | Fax: (404) |
| Authorized Representative: Janie Calhoun | Authorized Representative: Pat Labat |

1.      **Background**.

1.1     City desires to obtain from Service Provider the services ("Services") described generally on **Exhibit A** attached.

1.1     The total not to exceed compensation amount payable by City during the initial term of this Agreement is One Million One Hundred Thousand ($1,100,000.00) dollars ("Maximum Payment Amount"). More detailed terms concerning compensation payable under this Agreement are set forth on **Exhibit A.**

2.      **Term.**

2.1     Initial Term. This Agreement shall commence on the Effective Date and end three (3) years later. This initial term of the Agreement and any renewal term(s) are collectively referred to as the "Term".

2.2     Renewal Terms. City shall have the right in its sole discretion to renew this agreement for two [2] additional one year terms according to the following procedure:

If City desires to exercise an option to renew, it will submit legislation authorizing such renewal for consideration by City's Council and Mayor prior to the expiration of the prior Term. The legislation will establish that the date of such renewal will be the day immediately following the expiration day of the prior Term;

2.2.1   If such legislation is enacted, within _5_ days of such enactment, City will notify Service Provider of such renewal, at which time Service Provider shall be bound to

A-1

provide Services during such renewal Term, without the need for the Parties to execute any further documents evidencing such renewal, it being acknowledged by Service Provider that its initial execution of this Agreement is deemed its agreement to continue to provide Services during any renewal Term.

3.      **Interpretation**.

3.1      All capitalized terms used in this Agreement shall have the meanings ascribed to them in the Contract Documents and on **Exhibit B** attached hereto.

3.2      If there is a conflict between any of the Contract Documents, precedence shall be given in the following order:[1]

1.      Agreement
2.      Exhibit A – Services and Additional Compensation Terms
3.      Exhibit B – Definitions
4.      Exhibit C-Legislation
5.      Exhibit D - City Security Policies
6.      Exhibit E - Dispute Resolution Procedures
7.      Appendix A - Office of Contract Compliance Requirements
8.      Appendix B - Insurance and Bonding Requirements
9.      Additional Contract Documents

3.1      **Authorization**.  If applicable, this Agreement is authorized by legislation adopted by City which is attached as **Exhibit C**.

4.      **Services.**

4.1      Description of Services.  Service Provider agrees to provide to City the Services per this Agreement.  Exhibit A sets forth the following: (a) the period of time during which the Services will be provided; (b) a description of the Services to be provided; (c) the amounts payable and payment schedule for the Services; and (d) any additional provisions applicable to the Services.  If any services to be performed are not specifically included on Exhibit A, but are reasonably necessary to accomplish the purpose of this Agreement, they will be deemed to be implied in the scope of the Services to the same extent as if specifically described on **Exhibit A**.

4.2      Resources.      Unless otherwise expressly provided in this Agreement, all equipment, software, Facilities and Service Provider Personnel required for the proper performance of Services shall be furnished by and be under the control of Service Provider.  Service Provider shall be responsible, at its sole cost, for procuring and using such resources in proper and qualified and high quality working and performing order.

4.3      Change Documents.

---

[1] For purposes of this provision, authorized changes to an item listed in the order of precedence pursuant to a Change Document take precedence over the particular item changed.

4.3.1   This section will govern changes to the Agreement, whether such changes involve an increase in the Maximum Payment Amount or not. Changes in the Services or other aspects of this Agreement shall be made by written document ("Change Document" or "Unilateral Change Document").[2] All changes shall be implemented pursuant to this subsection (the "Change Document Procedures") and any Applicable Law.

4.3.2   Potential Change Documents that may be issued concerning this Agreement include, but are not limited to:

(a)   Change Documents to the Agreement involving an increase to the Maximum Payment Amount executed between City and Service Provider which may or may not require legislative approval under Code Section 2-1292;

(b)   Change Documents to the Agreement involving no increase to the Maximum Payment Amount, changes in the value of the Charges or changes in the terms or amounts of compensation under the Maximum Payment Amount executed between City and Service Provider pursuant to Code Section 2-1292(d); and

(c)   Unilateral Change Documents to the Agreement issued by City pursuant to Code Section 2-1292(d) involving no increase to the Maximum Payment Amount, changes in the value of the Charges or changes in the terms or amounts of compensation under the Maximum Payment Amount.

Change Documents that do not involve an increase in the Maximum Payment Amount will be executed pursuant to Code Section 2-1292(d) either bilaterally or unilaterally by City.

4.3.3   City may propose a change in the Services or other aspects of this Agreement by delivering written notice to Service Provider describing the requested change ("Change Request"). Within ten (10) days of receipt of City's Change Request, Service Provider shall evaluate it and submit a written response ("Proposed Change Document"). A Change Request which involves the reduction of Services shall be effective upon written notice to Service Provider.

4.3.4   Service Provider may, without receiving any Change Request, on its own submit a Proposed Change Document describing its own proposed requested change to the Agreement.

4.3.5   Each Proposed Change Document shall include the applicable schedule for implementing the proposed change, any applicable changes to the Charges (either increased or decreased) and all other information applicable to the proposed change. Each Proposed Change Document shall constitute an offer by Service Provider and shall be irrevocable for a

---

[2] Change Documents may assume numerous multiple forms and titles depending on the nature of the change involved (e.g. Change Order, Unilateral Change Order, Amendment, Contract Modification, Renewal, etc.).

A-3

period of sixty (60) days. City shall review and may provide Service Provider with comments regarding a Proposed Change Document, and Service Provider shall respond to such comments, if any. A Proposed Change Document from Service Provider will become effective only when executed by an authorized representative of City.

4.3.6   City may propose any changes to the Agreement, including, but not limited to, changes that it contends do not involve an increase to the Maximum Payment Amount, a change in the Charges or changes in the terms or amounts of compensation under the Maximum Payment Amount, and Service Provider shall, in good faith, evaluate such proposed Change Request. If City and Service Provider are able to reach agreement on such Change Request, each will execute a Change Document concerning such Change Request pursuant to Code Section 2-1292(d). Nothing in this Agreement shall, in the event of disagreement between City and Service Provider concerning a proposed Change Request, or otherwise, prohibit City from issuing a Unilateral Change Document to Service Provider, pursuant to Code Section 2-1292(d), and City and Service Provider agree to resolve their dispute pursuant to the Dispute Resolution Procedures set forth in **Exhibit E**. During the pendency of such dispute, Service Provider shall continue to perform the Services, as changed by such Unilateral Change Document.

4.4   Suspension of Services. City may, by written notice to Service Provider, suspend at any time the performance of any or all of the Services to be performed under this Agreement. Upon receipt of a suspension notice, Service Provider must, unless the notice requires otherwise, (a) immediately discontinue suspended Services on the date and to the extent specified in the notice; (b) place no further orders or subcontracts for materials, services or facilities with respect to suspended Services, other than to the extent required in the notice; and (c) take any other reasonable steps to minimize costs associated with the suspension.

5.   **Service Provider's Obligations**.

5.1   Service Provider Personnel. Service Provider shall be responsible, at its own cost, for all recruiting, hiring, training, educating and orienting of all Service Provider Personnel, all of whom shall be fully qualified and shall be authorized under Applicable Law to perform the Services.

5.2   Service Provider Authorized Representative. Service Provider designates the Service Provider Authorized Representative named on page 1 of this Agreement ("Service Provider Authorized Representative") and, such Person shall: (a) be a project executive and employee within Service Provider's organization, with the information, authority and resources available to properly coordinate Service Provider's responsibilities under this Agreement; (b) serve as primary interface and the single-point of communication for the provision of Services by Service Provider; (c) have day-to-day responsibility and authority to address issues relating to the Services; and (d) devote adequate time and efforts to managing and coordinating the Services.

5.3   Qualifications. Upon City's reasonable request, Service Provider will make available to City all relevant records of the education, training, experience, qualifications, work history and performance of Service Provider Personnel.

A-4

5.4     Removal of Personnel Assigned to City Contract. Within a reasonable period, but not later that seven (7) days after Service Provider's receipt of notice from City that the continued assignment to the City Contract of any Service Provider Personnel is not in the best interests of City, Service Provider shall remove such Service Provider Personnel from City's Contract. Service Provider will not be required to terminate the employment of such individual. Service Provider will assume all costs associated with the replacement of any Service Provider Personnel. In addition, Service Provider agrees to remove from City's Contract any Service Provider Personnel who has engaged in willful misconduct or has committed a material breach of this Agreement immediately after Service Provider becomes aware of such misconduct or breach.

5.5     Subcontracting.     Unless specifically authorized in this Agreement, Service Provider will not enter into any agreement with or delegate or subcontract any Services to any Third Party without the prior written approval of City, which City may withhold in its sole discretion. If Service Provider subcontracts any of the Services (after having first obtained City's prior written approval, in its sole discretion), Service Provider shall: (i) be responsible for the performance of Services by the subcontractors; (ii) remain City's sole point of contact for the Services; and (iii) be responsible for the payment to any subcontractors.

5.6     Key Service Provider Personnel and Key Subcontractors.

5.6.1     The following Persons are identified by Service Provider as Key Service Provider Personnel under this Agreement:

(a)     Supervisors; and

(b)     Cooks.

5.6.2     The following Persons are identified by Service Provider as Key Subcontractors under this Agreement:

(a)     Staff Assistants; and

(b)     Servers.

5.6.3     Service Provider shall not transfer, reassign or replace any Service Provider Key Personnel or Key Subcontractor, except as a result of retirement, voluntary resignation, involuntary termination for cause in Service Provider's sole discretion, illness, disability or death, during the term of this Agreement without prior written approval from City.

5.7     Conflicts of Interest. Service Provider shall immediately notify City in writing, specifically disclosing any and all potential or actual conflicts of interests, which arise or may arise during the execution of its work in the fulfillment of the requirements of the Agreement. City shall make a written determination as to whether a conflict of interest actually exists and the actions to be taken to resolve the conflict of interest.

A-5

5.8     Commercial Activities.     Neither Service Provider nor any Service Provider Personnel shall establish any commercial activity, issue concessions, or permits of any kind to third Parties for establishing any activities on City property.

6.          **City's Authorized Representative**.

6.1     Designation and Authority.   City designates the City Authorized Representative named on page 1 of this Agreement (the "City Authorized Representative") who shall: (a) serve as primary interface and the single-point of communication for the provision of Services; (b) have day-to-day responsibility to address issues relating to this Agreement; and (c) to the extent provided under the Code, have the authority to execute any additional documents or changes on behalf of City.

6.2     City's Right to Review and Reject.   Any Service or other document or item to be submitted or prepared by Service Provider hereunder shall be subject to the review of the City Authorized Representative. The City Authorized Representative may disapprove, if in the City Authorized Representative's sole opinion the Service, document or item is not in accordance with the requirements of this Agreement or sound professional service principles, or is impractical, uneconomical or unsuited in any way for the purposes for which the Service, document or item is intended. If any of the said items or any portion thereof are so disapproved, Service Provider shall revise the items until they meet the approval of the City Authorized Representative. However, Service Provider shall not be compensated under any provision of this Agreement for repeated performance of such disapproved items.

7.          **Payment Procedures.**

7.1     General.   City will not be obligated to pay Service Provider any amount in addition to the Charges for Service Provider's provision of the Services. Service Provider Personnel hourly rates, reimbursable expenses and other compensable items under this Agreement are set forth on **Exhibit A**.

7.2     Invoices.   Service Provider shall prepare and submit to City invoices for payment of all Charges in accordance with **Exhibit A**. Each invoice shall be in such detail and in such format as City may reasonably require. To the extent not set forth on **Exhibit A**, Service Provider shall invoice City monthly for Services rendered.

7.3     Taxes.   The Charges are inclusive of all taxes, levies, duties and assessments ("Taxes") of every nature due in connection with Service Provider's performance of the Services.   Service Provider is responsible for payment of such Taxes to the appropriate governmental authority. If Service Provider is refunded any Tax payments made relating to the Services, Service Provider shall remit the amount of such refund to City within forty-five (45) days of receipt of the refund.

7.4     Payment.   City shall endeavor to pay all undisputed Charges within thirty (30) days of the date of the receipt by City of a properly rendered and delivered invoice. Notwithstanding the forgoing, unless otherwise provided on **Exhibit A**, all undisputed Charges on an invoice properly rendered and delivered shall be payable within forty-five (45) days of the date of receipt by City.

A-6

7.5     Disputed Charges.  If City in good faith disputes any portion of an invoice, City may withhold such disputed amount and notify Service Provider in writing of the basis for any dispute within thirty (30) days of the later of: (a) receipt of the invoice; or (b) discovery of the basis for any such dispute.  City and Service Provider agree to use all reasonable commercial efforts to resolve any disputed amount in any invoice within thirty (30) days of the date City notifies Service Provider of the disputed amount.

7.6     No Acceptance of Nonconforming Work.  No payment of any invoice or any partial or entire use of the Services by City constitutes acceptance of any Services.

7.7     Payment of Other Persons.  Prior to the issuance of final payment from City, Service Provider shall certify to City in writing, in a form satisfactory to City, that all subcontractors, materialmen, suppliers and similar firms or persons engaged by Service Provider in connection with this Agreement have been paid in full or will be paid in full utilizing the monies constituting final payment to Service Provider.

8.      **Service Provider Representations and Warranties**.  As of the Effective Date and continuing throughout the Term, Service Provider warrants to City that:

8.1     Authority.  Service Provider is duly incorporated or formed, validly existing and is in good standing under the laws of the state in which it is incorporated or formed, and is in good standing in each other jurisdiction where the failure to be in good standing would have a material adverse affect on its business or its ability to perform its obligations under this Agreement.  Service Provider has all necessary power and authority to enter into and perform its obligations under this Agreement, and the execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement have been duly authorized by all necessary actions on its part.  This Agreement constitutes a legal, valid and binding obligation of Service Provider, enforceable against it in accordance with its terms.  No action, suit or proceeding in which Service Provider is a party that may restrain or question this Agreement or the provision of Services by Service Provider is pending or threatened.

8.2     Standards.     The Services will be performed in a workmanlike manner in accordance with the standards imposed by Applicable Law and the practices and standards used in well managed operations performing services similar to the Services.

8.3     Conformity.     The development, creation, delivery, provision, implementation, testing, maintenance and support of all Services shall conform in all material respects to the description of such Services in the Contract Documents.

8.4     Materials and Equipment.  Any equipment or materials provided by Service Provider shall be new, of clear title, not subject to any lien or encumbrance, of the most suitable grade of their respective kinds for their intended uses, shall be free of any defect in design or workmanship and shall be of merchantable quality and fit for the purposes for which they are intended.

9.      **Compliance with Laws**.

9.1     General.  Service Provider and its subcontractors will perform the Services in compliance with all Applicable Laws.

9.2     City's Socio-Economic Programs.  Service Provider shall comply with Appendix A and any applicable City socio-economic programs, including, but not limited to, City's EBO and EEO Programs, and requirements set forth in the Code in the performance of the Services.

9.3     Consents, Licenses and Permits.  Service Provider will be responsible for, and the Charges shall include the cost of, obtaining, maintaining and complying with, and paying all fees and taxes associated with, all applicable licenses, authorizations, consents, approvals and permits required of Service Provider in performing Services and complying with this Agreement.

10.     **Confidential Information.**

10.1    General.  Each Party agrees to preserve as strictly confidential all Confidential Information of the other Party for two (2) years following the expiration or termination of this Agreement; provided, however, that each Party's obligations for the other Party's Confidential Information that constitutes trade secrets pursuant to Applicable Laws will continue for so long as such Confidential Information continues to constitute a trade secret under Applicable Law. Any Confidential Information that may be deemed Sensitive Security Information by the Department of Homeland Security or any other similar Confidential Information related to security will be considered trade secrets. Upon request by City, Service Provider will return any trade secrets to City. Each Party agrees to hold the Confidential Information of the other in trust and confidence and will not disclose it to any Person, or use it (directly or indirectly) for its own benefit or the benefit of any other Person other than in the performance of its obligations under this Agreement.

10.2    Disclosure of Confidential Information or Information Other Party Deems to be Confidential Information.  Each Party will be entitled to disclose any Confidential Information if compelled to do so pursuant to: (i) a subpoena; (ii) judicial or administrative order; or (iii) any other requirement imposed upon it by Applicable Law. Prior to making such a disclosure, to the extent allowed pursuant to Applicable Law, each Party shall provide the other with thirty six (36) hours prior notice by facsimile of its intent to disclose, describing the content of the information to be disclosed and providing a copy of the pleading, instrument, document, communication or other written item compelling disclosure or, if not in writing, a detailed description of the nature of the communication compelling disclosure with the name, address, phone number and facsimile number of the Person requesting disclosure. Should the non-disclosing Party contest the disclosure, it must: a) seek a protective order preventing such disclosure; or b) intervene in such action compelling disclosure, as appropriate.    This Section shall be applicable to information that one Party deems to be Confidential Information but the other Party does not.

11.     **Work Product.**

11.1    Except as otherwise expressly provided in this Agreement, all reports, information, data, specifications, computer programs, technical reports, operating manuals and similar work or other documents, all deliverables, and other work product prepared or authored

A-8

by Provider or any of its contractors exclusively for the City under this Agreement, and all intellectual property rights associated with the foregoing items (collectively, the "Work Product") shall be and remain the sole and exclusive property of the City.    Any of Provider's or its contractors' works of authorship comprised within the Work Product (whether created alone or in concert with City or Third Party) shall be deemed to be "works made for hire" and made in the course of services rendered and, whether pursuant to the provisions of Section 101 of the U.S. Copyright Act or other Applicable Law, such Work Product shall belong exclusively to City.  Provider and its contractors grant the City a non-exclusive, perpetual, worldwide, fully paid up, royalty-free license to all Work Product not exclusively developed for City under this Agreement.

11.2    If any of the Work Product is determined not to be a work made for hire, Service Provider assigns to City, worldwide and in perpetuity, all rights, including proprietary rights, copyrights, and related rights, and all extensions and renewals of those rights, in the Work Product.  If Service Provider has any rights to the Work Product that cannot be assigned to City, Service Provider unconditionally and irrevocably waives the enforcement of such rights and irrevocably grants to City during the term of such rights an exclusive, irrevocable, perpetual, transferable, worldwide, fully paid and royalty-free license, with rights to sublicense through multiple levels of sublicensees, to reproduce, make, have made, create derivate works of, distribute, publicly perform and publicly display by all means, now known or later developed, such rights.

11.3    City shall have the sole and exclusive right to apply for, obtain, register, hold and renew, in its own name or for its own benefit, all patents, copyrights, applications and registrations, renewals and continuations and all other appropriate protection.

11.4    To the extent exclusive title or complete and exclusive ownership rights in any Work Product created by Service Provider Personnel may not originally vest in City by operation of Applicable Law, Service Provider shall, immediately upon request, unconditionally and irrevocably assign, transfer and convey to City all rights, title and interest in the Work Product.

11.5    Without any additional cost to City, Service Provider Personnel shall promptly give City all reasonable assistance and execute all documents City may reasonably request to enable City to perfect, preserve, enforce, register and record its rights in all Work Product. Service Provider irrevocably designates City as Service Provider's agent and attorney-in-fact to execute, deliver and file, if necessary, any documents necessary to give effect to the provisions of this Section and to take all actions necessary, in Service Provider's name, with the same force and effect as if performed by Service Provider.

12.    **Audit and Inspection Rights.**

12.1    General.

12.1.1 Service Provider will provide to City, and any Person designated by City, access to Service Provider Personnel and to Service Provider owned Facilities for the purpose of performing audits and inspections of Service Provider, Service Provider Personnel and/or any of

A-9

the relevant information relating to the Services and this Agreement. Such audits, inspections and access may be conducted to: (a) verify the accuracy of Charges and invoices; (b) examine Service Provider's performance of the Services; (c) monitor compliance with the terms of this Agreement; and (d) any other matters reasonably requested by City. Service Provider shall provide full cooperation to City and its designated Persons in connection with audit functions and examinations by regulatory authorities.

12.1.2 All audits and inspections will be conducted during normal business hours (except with respect to Services that are performed during off-hours).

12.1.3 Service Provider shall promptly respond to and rectify the deficiencies identified in and implement changes suggested by any audit or inspection report.

12.1.4 If any audit or inspection of Charges or Services reveals that City has overpaid any amounts to Service Provider, Service Provider shall promptly refund such overpayment and Service Provider shall also pay to City interest on the overpayment amount at the rate of one-half percent (0.5%) per month (or such maximum rate permissible by Applicable Law, if lower) from the date the overpayment was made until the date the overpayment is refunded to City by Service Provider.

12.2    Records Retention.    Until the later of: (a) six (6) years after expiration or termination of this Agreement; (b) the date that all pending matters relating to this Agreement (*e.g.*, disputes) are closed or resolved by the Parties; or (c) the date such retention is no longer required to meet City's records retention policy or any record retention policy imposed by Applicable Law, if more stringent than City's policy, Service Provider will maintain and provide access upon request to the records, data, documents and other information required to fully and completely enable City to enforce its audit rights under this Agreement.

13.    **Indemnification by Service Provider.**

13.1    General Indemnity.    Service Provider shall indemnify and hold City, its agencies and its and their respective officers, directors, employees, advisors, and agents, successors and permitted assigns, harmless from any losses, liabilities, damages, demands and claims, and all related costs (including reasonable legal fees and costs of investigation, litigation, settlement, judgment, interest and penalties) arising from claims or actions based upon:

(a)    Service Provider's or Service Provider Personnel's performance, non-performance or breach of this Agreement;

(b)    compensation or benefits of any kind, by or on behalf of Service Provider Personnel, or any subcontractor, claiming an employment or other relationship with Service Provider or such subcontractor (or claiming that this Agreement creates an inherent, statutory or implied employment relationship with City or arising in any other manner out of this Agreement or the provision of Services by such Service Provider Personnel or subcontractor);

(c)    any actual, alleged, threatened or potential violation of any Applicable Laws by Service Provider or Service Provider Personnel, to the extent

such claim is based on the act or omission of Service Provider or Service Provider Personnel, excluding acts or omissions by or at the direction of City;

(d)    death of or injury to any individual caused, in whole or in part, by the tortious conduct of Service Provider or any Person acting for, in the name of, at the direction or supervision of or on behalf of Service Provider; and

(e)    damage to, or loss or destruction of, any real or tangible personal property caused, in whole or in part, by the tortious conduct of Service Provider or any Person acting for, in the name of, at the direction or supervision of or on behalf of Service Provider.

13.2    Intellectual Property Indemnification by Service Provider. Service Provider shall indemnify and hold City Indemnitees, harmless from and against any losses, liabilities, damages, demands and claims, and all related costs (including reasonable legal fees and costs of investigation, litigation, settlement, judgment, interest and penalties) arising from claims or actions based upon any of the materials and methodologies used by Service Provider (or any Service Provider agent, contractor, subcontractor or representative), or City's use thereof (or access or other rights thereto) in connection with the Services infringes or misappropriates the Intellectual Property Rights of a Third Party. If any materials or methodologies provided by Service Provider hereunder is held to constitute, or in Service Provider's reasonable judgment is likely to constitute, an infringement or misappropriation, Service Provider will in addition to its indemnity obligations, at its expense and option, and after consultation with City regarding City's preference in such event, either: (A) procure the right for City Indemnitees to continue using such materials or methodologies; (B) replace such materials or methodologies with a non-infringing equivalent, provided that such replacement does not result in a degradation of the functionality, performance or quality of the Services; (C) modify such materials or methodologies, or have such materials or methodologies modified, to make them non-infringing, provided that such modification does not result in a degradation of the functionality, performance or quality of the materials or methodologies; or (D) create a feasible workaround that would not have any adverse impact on City.

14.    **Limitation of Liability**.

14.1    General.    THE MAXIMUM AGGREGATE LIABILITY OF CITY HEREUNDER IS LIMITED TO THE TOTAL OF ALL CHARGES ACTUALLY PAID DURING THE CURRENT YEAR UNDER THE AGREEMENT.    EXCEPT FOR PROVIDER'S INDEMNITY OBLIGATIONS SET FORTH IN THE **SECTION ENTITLED "INDEMNIFICATION BY PROVIDER"** AND WILLFUL MISCONDUCT OR GROSS NEGLIGENCE BY PROVIDER, NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, OR PUNITIVE DAMAGES (OR ANY COMPARABLE CATEGORY OR FORM OF SUCH DAMAGES, HOWSOEVER CHARACTERIZED IN ANY JURISDICTION), ARISING OUT OF OR RESULTING FROM THE PERFORMANCE OR NONPERFORMANCE OF ITS OBLIGATIONS UNDER THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, NEGLIGENCE, TORT, STRICT LIABILITY, PRODUCTS LIABILITY OR OTHERWISE, AND EVEN IF

FORESEEABLE OR IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

14.2     Exceptions to Limitations. The limitations set forth in the immediate subsection shall not apply to: (a) personal injury, wrongful death or tangible property damage; or (b) any claim involving a violation of any Applicable Law concerning homeland security, terrorist activity or security sensitive information, regardless of the manner in which such damages are characterized.

15.          **Insurance and Bonding Requirements**. Service Provider shall comply with the insurance and bonding requirements set forth on **Appendix B.**

16.          **Force Majeure.** Neither Party will be liable for default or delay in the performance of its obligations under this Agreement to the extent such default or delay is caused by a Force Majeure Event. Upon the occurrence of a Force Majeure Event, the non-performing Party will be excused from performance or observance of affected obligations for as long as: (a) the Force Majeure Event continues; and (b) the Party continues to attempt to recommence performance or observance to the extent commercially reasonable without delay. If any Force Majeure Event continues for thirty (30) consecutive days, City may, at its option during such continuation, terminate this Agreement, in whole or in part, without penalty or further obligation or liability of City.

17.          **Termination**.

17.1     Termination by City for Cause. City may at its option, by giving written notice to Service Provider, terminate this Agreement:

(a)     for a material breach of the Contract Documents by Service Provider that is not cured by Service Provider within seven (7) days of the date on which City provides written notice of such breach;

(b)     immediately for a material breach of the Contract Documents by Service Provider that is not reasonably curable within seven (7) days;

(c)     immediately upon written notice for numerous breaches of the Contract Documents by Service Provider that collectively constitute a material breach or reasonable grounds for insecurity concerning Service Provider's performance; or

(d)     immediately for engaging in behavior that is dishonest, fraudulent or constitutes a conflict of interest with Service Provider's obligations under this Agreement or is in violation of any City Ethics Ordinances.

17.2     Re-procurement Costs. In addition to all other rights and remedies City may have, if this Agreement is terminated by City pursuant to the above subsection entitled **"Termination by City for Cause"**, Service Provider will be liable for all costs in excess of the Charges for all terminated Services reasonably and necessarily incurred by City in the completion of the Services, including the cost of administration of any agreement awarded to other Persons for completion. If City improperly terminates this Agreement for cause, the

A-12

termination for cause will be considered a termination for convenience in accordance with the provisions of the **Section entitled "Termination by City for Convenience"**.

17.3    Termination by City for Insolvency.    City may terminate this Agreement immediately by delivering written notice of such termination to Service Provider if Service Provider: (a) becomes insolvent, as that term may be defined under Applicable Law, or is unable to meet its debts as they mature; (b) files a voluntary petition in bankruptcy or seeks reorganization or to effect a plan or other arrangement with creditors; (c) is adjudicated bankrupt or makes an assignment for the benefit of its creditors generally; (d) fails to deny or contest the material allegations of an involuntary petition filed against it pursuant to any Applicable Law relating to bankruptcy, arrangement or reorganization, which is not dismissed within sixty (60) days; or (e) applies for or consents to the appointment of any receiver for all or any portion of its property.

17.4    Termination by City for Convenience.    At any time during the Term of this Agreement, City may terminate this Agreement for convenience upon fourteen (14) days written notice of such termination. Upon a termination for convenience, Service Provider waives any claims for damages, including loss of anticipated profits. As Service Provider's sole remedy and City's sole liability, City will pay Charges for the Services properly performed prior to the notice of termination, plus all reasonable costs for Services performed after the termination, as specified in such notice, and reasonable administrative costs of settling and paying claims arising out of the termination of Services under purchase orders or subcontracts except to the extent any products under such purchase orders or subcontracts can be used by Service Provider in its business within the thirty (30) days following termination. If requested, Service Provider shall substantiate such costs with proof satisfactory to City.

17.5    Termination for Lack of Appropriations.    If, during the Term of this Agreement, legislation establishing a Maximum Payment Amount for the following year is not enacted, this Agreement will terminate in its entirety on the last day of the annual term for which a Maximum Payment Amount has been legislatively authorized.

17.6    Effect of Termination.    Unless otherwise provided herein, termination of this Agreement, in whole or in part and for any reason, shall not affect: (a) any liabilities or obligations of either Party arising before such termination or out of the events causing such termination; or (b) any remedies to which a Party may be entitled under this Agreement, at law or in equity.    Upon termination of this Agreement, Service Provider shall immediately: (i) discontinue Services on the date and to the extent specified in the notice and place no further purchase orders or subcontracts to the extent that they relate to the performance of the terminated Services; (ii) inventory, maintain and turn over to City all work product, licenses, equipment, materials, plant, tools, and property furnished by Service Provider or provided by City for performance of the terminated Services; (iii) promptly obtain cancellation, upon terms satisfactory to City, of all purchase orders, subcontracts, rentals or any other agreements existing for performance of the terminated Services, or assign those agreements, as directed by City; (iv) comply with all other reasonable requests from City regarding the terminated Services; and (v) continue to perform in accordance with all of the terms and conditions of this Agreement any portion of the Services that are not terminated.

A-13

18.     **Dispute Resolution**.

18.1     All disputes under the Contract Documents or concerning Services shall be resolved under this **Section** and **Exhibit E**. Both Parties shall continue performing under this Agreement while the Parties are seeking to resolve any such dispute unless, during that time, this Agreement is terminated or expires. A dispute over payment will not be deemed to preclude performance by Service Provider.

18.2     Applicable Law. The Contract Documents shall be governed by and construed in accordance with the substantive laws of the State of Georgia without regard to its choice of law principles.

18.3     Jurisdiction and Venue. The Parties hereby submit and consent to the exclusive jurisdiction of the state courts of Fulton County, Georgia or in the United States District Court for the Northern District of Georgia and irrevocably agree that all actions or proceedings relating to this Agreement will be litigated in such courts, and each of the Parties waives any objection which it may have based on improper venue or forum non conveniens to the conduct of any such action or proceeding in such court.

19.     **General**.

19.1     Notices. Any notice under this Agreement shall be in writing and sent to the respective Party at the address on page 1 of this Agreement, or, if applicable, to the City's Department of Procurement at 55 Trinity Avenue, Suite 1790, Atlanta, Georgia, 30303, and shall be deemed delivered: (a) when delivered by hand or courier or by overnight delivery with signature receipt required; (b) when sent by confirmed facsimile with a copy sent by another means specified in this **Section**; or (c) three (3) days after the date of mailing by United States certified mail, return receipt requested, postage prepaid. Any Party may change its address for communications by notice in accordance with this Section.

19.2     Waiver. Any waiver by the Parties or failure to enforce their rights under this Agreement shall be deemed applicable only to the specific matter and shall not be deemed a waiver or failure to enforce any other rights under this Agreement, and this Agreement shall continue in full force and effect as though such previous waiver or failure to enforce any rights had not occurred. No supplement, modification, amendment or waiver of this Agreement will be binding on City unless executed in writing by the City Authorized Representative.

19.3     Assignment. Neither this Agreement, nor any rights or obligations under it, are assignable in any manner without the prior written consent of the other Party and any attempt to do so without such written consent shall be void ab initio.

19.4     Publicity.     Service Provider shall not make any public announcement, communication to the media, take any photographs or release any information concerning City, the Services or this Agreement without the prior written consent of City.

19.5     Severability. In the event that any provision of this Agreement is declared invalid, unenforceable or unlawful, such provision shall be deemed omitted and shall not affect the validity of other provisions of this Agreement.

A-14

19.6    Further Assurances.    Each Party shall provide such further documents or instruments required by the other Party as may be reasonably necessary to give effect to this Agreement.

19.7    No Drafting Presumption.  No presumption of any Applicable Law relating to the interpretation of contracts against the drafter shall apply to this Agreement.

19.8    Survival.   Any provision of this Agreement which contemplates performance subsequent to any termination or expiration of this Agreement or which must survive in order to give effect to its meaning, shall survive the expiration or termination of this Agreement.

19.9    Independent Contractor.  Service Provider is an independent contractor of City and nothing in this Agreement shall be deemed to constitute Service Provider and City as partners, joint venturers, or principal and agent, or be construed as requiring or permitting the sharing of profits or losses. Neither Party has the authority to represent or bind or create any legal obligations for or on behalf of the other Party.

19.10    Third Party Beneficiaries.    This Agreement is not intended, expressly or implicitly, to confer on any other Person any rights, benefits, remedies, obligations or liabilities.

19.11    Cumulative Remedies.    Except as otherwise provided herein, all rights and remedies under this Agreement are cumulative and are in addition to and not in lieu of any other remedies available under Applicable Law, in equity or otherwise.

19.12    Entire Agreement.  The Contract Documents contain the entire Agreement of the Parties relating to their subject matter and supersede all previous communications, representations or agreements, oral or written, between the Parties with respect to such subject matter. This Agreement may only be amended or modified by a writing executed by each Party's authorized representative and each such writing shall be deemed to incorporate the Contract Documents, except to the extent that City is authorized under Applicable Law to issue Unilateral Change Documents. SERVICE PROVIDER MAY NOT UNILATERALLY AMEND OR MODIFY THIS AGREEMENT BY INCLUDING PROVISIONS IN ITS INVOICES, OR OTHER BUSINESS FORMS, WHICH SHALL BE DEEMED OBJECTED TO BY CITY AND OF NO FORCE OR EFFECT.

A-15

The Parties hereto by authorized representatives have executed this Agreement as of the Effective Date.

**City of Atlanta**

MAYOR          (Seal)

MUNICIPAL CLERK

**Approved:**

[Using Agency]

**APPROVED:**

CHIEF PROCUREMENT OFFICER

**Approved as to form:**

City Attorney

**[Service Provider]**

**Corporate signature:**

By: TRINITY SERVICES GROUP, INC

Name: Larry G. Vaughn

Title: CEO

Corporate Secretary/Assistant
Secretary (Seal)

US2000 10653463.3

# EXHIBIT A

## SERVICES AND ADDITIONAL COMPENSATION TERMS

US2000 10655463.3

## SCOPE OF WORK

### FC-5441, Food Services for the Atlanta Detention Center

### 3.1. TERM OF CONTRACT

1. The vendor shall furnish all food, labor, materials and supplies necessary to provide food services to inmates, staff and official visitors, as per the accepted bid and contract for the period beginning for three(3) years with two (2) one (1) year renewal options at the City's sole discretion.

2. Any award made as a result of this bid shall be for the thirty six (36) month period stated above. The City reserves the right for options for two (2) additional twelve (12) month extensions pending approval by the Atlanta City Council and availability of departmental appropriated funding.

3. The contract renewal will be under the same terms and conditions. Option year(s) price increase(s) in the contract, if exercised by the City, shall be limited to the proposal price(s) Offered unless otherwise specifically accepted by the City, but in no instance shall exceed the Consumer Price Index. The term **"Consumer Price Index"** shall mean the Consumer Price Index published by the Bureau of Labor Statistics of the U.S. Department of Labor, with particular reference to the average shown on such index for **"all items"**.

### 3.2. SPECIFICATIONS

### A. FOOD SERVICE REQUIREMENTS

1. The vendor shall submit cost proposals for two (2) hot meals per day and one (1) cold meal per day, except for Federal inmates, based upon a vendor-proposed four (4) week menu incorporated specifications from this RFP. Federal inmates (300 per day) boarded under contract with the United States marshal Services and Fulton county inmates (200 per day) will be provided three (3) hot meals per day. Meals will be serviced seven (7) days per week for the staff, inmates and visitors. Sentenced inmates workers shall received a double portion of meat, and a regular portion of drink, fruit and dessert. There are approximately <u>two hundred (200)</u> sentenced inmate workers served per day.

2. The vendor shall submit four (4) seven day period menus. Each menu must be based on specifications found in this RFP, as indicated in Nos. 13, 14a-f, 15 and 16 of this section (A. Food Service Requirements).

3.  There shall be no more than twelve (12) hours between the dinner and breakfast meals. A meal scheduled shall be mutually agreed upon between the vendor and Corrections Department.

4.  Food service will be required 365 days per year (366 in leap year) three (3) times per day during the hours specified by the jail administration.

5.  Food and food service will meet all applicable guidelines as specified in this scope of work. It shall be the responsibility of the vendor to receive and maintain required certifications in accordance with the above on an annual or as-required basis.

6.  All meals/menus shall be changed and approved by a registered dietician every six (6) weeks. **The vendor must provide a medical dietician on an as-required basis.** These services shall be provided to the jail administration at no additional cost to the City.

7.  The vendor shall warrant that all meals will be served in a manner that makes them nutritious, wholesome, palatable and visibly pleasing. The meals will be served to the inmates on insulated trays. Hot foods will be served to arrive to the inmates at a minimum of 140 degrees and cold foods to arrive to the inmates at a maximum of 45 degrees. The vendor's compliance or non-compliance with the provision shall be solely determined the Corrections Chief or designee.

8.  The vendor shall prepare all meals in compliance with recipes established in the current series of Armed Forces Recipe Service Cards as amended. In the event that the menu item is not covered by these recipes, a recipe will be mutually agreed upon by the vendor and the Corrections Chief or designee. Individual recipes may be substituted with the written consent of the Corrections Chief or designee only.

9.  The vendor shall provide, at no additional cost, meals conforming to medically prescribed diets, liquid nutritional supplements, including snacks when prescribed, and meals conforming to special religious requirements.

10. The City shall only provide approximately 3,000 insulated trays with covers; the contract shall be responsible for purchasing replacements, due to loss or damage resulting from contractor's employee negligence.

11. The vendor shall provide all or any additional of the following necessary in the performance of the requirements constrained within this document:

    A.  Insulated trays with covers to match existing Tivoli II stock.
    B.  Tray drying racks, model J70 or equivalent.
    C.  Meal delivery cart with 5.0 gallon beverage container, Tivoli III or equivalent.
    D.  Twelve (12) foot conveyor to accommodate Tivoli II hot trays.
    E.  Three EZ-bagger model 1400.
    F.  Five Dayton floor fans 3c674c

G.   Two Hobart slicers 1712e1612

H.   Two DBL stacked ovens 9601ch0082/85 Garland 9601cj0086/87

I.   Two Groen gas kettles AH 160

J.   One tilt gas skillet, Grogen hfp24

K.   3 steam tables 5 well EP305m

L.   One steam table 4 well Seco Matic DME 4 van

M.   One yogurt machine Saniserv

N.   Two microwave ovens

O.   10,000 coffee mugs/ Jones xylon

P.   1,000 trays/Aladdin

Q.   Soup pot pc7

R.   280 was racks Rayburn

S.   30 waste well dollies

T.   WWD-100

U.   One hot dog cook/warm American Permanent ware/PRZA

12.   The vendor shall provide, to those inmates at court and bindovers, a meal consisting of a **minimum** two (2) each sandwiches, fruit, and drink per inmate.

13.   All meals must be freshly prepared on-site. It is specifically understood that **NO pre-cooked casseroles or other pre-cooked items shall be used for entrees and no outdated products, frozen fruit or frozen shipped products, egg substitutes, raw meat or fillers such as soybeans will be used by the vendor, with the exception of USDA COMMODIY PROVISIONS.**

14.   The vendor will be expected to use the following food products as required to maintain a high quality meal to the jail's inmates, they are as follows:

a.   Ground beef, cube steak, luncheon meats and some chicken and fish products

b.   Frozen concentrate juices, 100% juice content.

c.   Fresh or frozen potato products.

d.   Canned vegetables with fresh are not available.

e.   Fresh or frozen scrambled eggs.

f.   Frozen desserts such as ice cream, pies, cakes, etc.

15.   Vendor **shall not** serve pork in the inmate meals. (There is a substantial percentage of the inmate population with religious prohibitions regarding pork), however, it can be used in meals served in the Staff Dining Room at infrequent intervals.

16. The vendor shall include in the proposal the serving of special holiday meals at contract prices, identifying holidays and indicating the proposed menus. A minimum of five (5) Holiday/Spirit Lifter meals shall be provided annually. These will include the Easter, Thanksgiving, Christmas and New Year holiday, with approximately ten (10) other scheduled for staff at the discretion of the Corrections Chief or designee.

17. The staff meals are to include, in addition to the menu served to the inamtes, the following:

    a. One (1) additional hot meat and vegetable;

    b. A self-service salad bar with a variet of condiments. This will include, but is not limited to, low-fat cottage cheese, tune/chicken salad, fresh fruits, puddings, pickles, bean sprouts, bean salad, etc.;

    c. A selection of desserts such as pies, layer cakes, pubddings, frozen yogurt and frozen confections;

    d. An assortment of beverages, including soft drinks whole and skim mikl, fruit punch, iced and hot team and coffee;

    e. Miscellaneous items such as ketchup, mustard, mayonnaise, salt, pepper, sugar and cream;

    f. A hot grill, cheese fro preparation fo sandwiches (hamburger, gridlled chees, hot dogs, etc). Capability of preparing deep fried foods i.e. freach fries, fried chicken, etc.; and

    g. Soup station with a variety of soups served in accordance with the weather.

18. Vendor will be required to maintain a minimum food inventory level of five (5) days. Onsite storage will be provided, off-site storage, if required will be provided at the vendor's expense.

19. Inmates will not be allowed to work in the food preparation area, except as a participant in the Jail Inmate Jobs/Culinary Arts Program, and supervised by a food service supervisor. **Otherwise, inmates will only be allowed to work washing pots and pans, general cleanlgn duties, warehousing and storage areas.** Vendor must provide tis own civilian staff to prepare food for the inamtes and staff dining.

20. The vendor shall provide industry standatd food service uniforms for all employees. Staff unifroms must be approved by the City pripr to their being used and/or issued. The vendor must seek City approval before any change of unifrom design, colors, issued items, etc.

21. The vendor must provide for all food service staff workers to have coats or sweaters available, so none will be brought from outside of the facility by food service workers.

22. Food service staff will not be allowed to bring personal items (handbags, storage bags, boxes, packages, etc.) into the facility as they enter the building. Public loackers are available for such items to be stored during the workday.

23. The vendor shall purchase and provide a **separate invoice** for coffee and supplies used by the Corrections department administration and staff, and the jail administration and staff.

24. The vendor agrees to provide catered special event meals, designedt by the Corrections Chief or designee, with a minimum forty-eight (48) hour notice. Special event meals with be added to the weekly meal count and billed as additional measl **at the contract rate.**

25. The vendor is to provide and maintain a meal ticket system for guests and employees. This systme must be mutually agreed upon by the Corrections Chief or designee and the vendor.

26. Vendor shall make allowance for those inmates involved in trials and/or bond hearings and the dditional inmates processed agter the evening meal. All inmates bookin-in after the evening meal has been served must be proviede meals; this includes the tiem period from the evening meal until breakfast the following morning.

B. OTHER REQUIREMENTS

1. Vendor shall provide all consumable ksupplies and foof products, including paper products, Styrofoam producst and cleaning supplies, which are required for service operation. All such purchases shall be made in the vendor's name and billed to their business address, not a Corrections Department address.

2. Vendor shall be responsible for complete cleaning, housekeeping and vector control of the food service preparation areas including staff dining room and storage areas. The vendor will, on a continueing basis, maintain standares of sanitation requited by state and local regulations. The vendor will place all trash and garbage in trash bins located in the desiganted area. Vector control ashall meet standards found in the U.S. Department of Health and Human Services (DHHS) *Food Service Sanitation Manual.*

3. Emplyees assigned to duty at the City of Atlanta Jail shall submit to periodic health sxaminations, at least as frequently asnd as stringently as required by law. Vendor also agrees to submit, upon request, to the City satisfactory evidence of compliance with all health reulations. **It is mandatory that all vendor employees have halid health**

**cerficates and be approved by the Correctiosn Department, prior to being allowed to work with in the facility.**

4.  Vendor shall secure and pay all federal, state and local licenses, permits and fees required for the operation of the food services provided bereunder. The vendor shall also be responsible for paying any sales, use and/or personal property taxes on the vendor's equipment which are imposed upon the operatino.

5.  The vendor shall return to the City at the expiration of this contract, the food service premisis and rquipment, in good condition, except for that which may have been damaged by fire, flood ro unavoidable occurrence and except to the extent that said equipemtn may have been stolen by persons other than employees of the vendor without negligence on the part of the vendor or its employees and provideing that all damages and losses are reported to the City upon discovery. A quarterly inventoy shall be submitted to the City for all items covered by this paragrah. **The bidder shall pay for ALL needed repairs.** Equipment, which in the opinion of the City, has exceeded its useful life will be repalced by the City at no charge to the vendor. The decision as to the suitabliity of the replacement shall be as detemined by the City after consultation with the vendor. If vendor abuses the equipment, said equipment will have to be repaird and/or replaced by the vendor.

6.  The vendor agrees to make the fullest use of the USDA donated commodities when they are made available, and are wholesome and appropriated for menu purposes. The vednor shall not accept any such commodities which are contaminated or in excessive amounts. The utilization and/or control of USDA donated commodities are subject to the following reqirements.

    a.  The vendor will properly handle, store and prepare all commodities IN ACCORDANCE WITH U.S.D.A. REGULATIONS.

    b.  A weekly inventory shall be taken of all commodities. The reports shall included for each USDA donate commodity, the commodiies on hand at the beginnign of the week, the quantity used, the quanity lost due to spoilage, theft or shrinkage and the balance at the end of the week. **The inventory reprots will be maintained and stored by the vendor for the duration fo the contract, after which time all recoreds and reports will be turned over to the City.**

    c.  All donated commodities used will be credited, at faird market valve, to the City. The vendor will not add charge of any kind for the handling, storage and using commodities.

7.  The successful vendor shall provide the Correctiosn Department with a montly list of all vacant positions for th ekitchen, to be comparable to the staffing level indicate in the

RFP. All positions cacant for more than 15 days, the vendor will credit the City for these vacant positions at theach position's rate of pay.

8. The vendor shall keep full and accurate records of sales and meal count records in connection with the food services. A copy of said record shall be supplies to the Corrections Chief or designee on a weekly basis on the first working day of the sbusequent week. In addition, all such records shall be available for audint by the City at any time during regular working khours.

   a. Faciltiy inskpections shall be made by the contract administrator, appointed by the City, when deemed necessary, with or witout advance notice to the vendor. The facilities and equipment used in the contract shall not be sued to prepare food for agencies or persons other than those designated under the proposal without advance written approval of the Corrections Chief or his designee.

   b. Inspections of kitchen facilities by City and state helath agencies must achieve satisfactory ratings.

9. The food service and principal company shall have a minimum of three (3) years experience in jail/correctional food service serving a minimum of 2,000 inmates. (Note: jail food service in this contrxt means the food service staff delivered food to the inmates). Vendors must provide a minimum of three (3) references for which like services were provideds, and where the same program of delivering food to a minimum of 2,000 inmates has been followed. **Failure to provide prood of minimum experience will result inrejection of bid.**

10. Vendor shall be repsonsible for equipment repair and maintenance of City's kitch equipment, as well as the vendor's own rquipment, at the vendor's expense. Vendor shall bear all costs of goods and supplies nessary to provide complete food services, during the period repairs are being made to kitchen equipemt. These costs specifically include Styrofoam trays and ice, in the event of dishwasher or ice machine repairs.

11. The vendor will be responsible for provideing a van or truck for the vendor's use. This vehicle must be provided exclusively for use at the City of Atlanta jail.

12. The vendor sahll have the ability to cary an accounts receivable balance for a minimum of 60 days. A copy of the vendor's most recent audited financial report is to be inluded in the RFP proposal.

13. Vendor will be responsible to remove, at their expense, all wate produts deep fryer grease, etc. All short time storage must be within containers that meet health codes.

14. Vendor will be responsible for emptying, at their expense, the grease trap at least bi-monthly and/or upon need if sooner. Any and all routine cleaning and maintenance will also eb the vendor's reponsiblity.

15. Any and all bids, invoices and general business matters will be mailed to the vendor's corporate address and not to the City jail or other City addresses.

16. The bidder shall provide a Culinary Arts Program for the inmate's training. The bidder will use an American Culinary Institue approved training curriculum. Approximately fifty (50) inmate students will be assigned to the program annually. The successful bidder should be prepared to assign staff for instrucitn.

## C. STAFF REQUIREMENTS

1. All employees of the vendor, who will work in the jail facility, must have a background clearance by the Corrections Department prior to beginning work in the facility. All employees must comply with the Corrections Department's policies and procedures relating to facility operations and security.

2. The On-site Food Service Director shall have a minimum of five (5) years experience in jail food service operations of similar size and natur, as described in B.8 above. The food Service Director will work on-site a minimum of forty (40) hours per week. The Food service director will not funciton as a relief shift supervisor, or cook in this facility. The Food Service Director will have experience in a facility with a minimum of twenty(20) full time staff, and housing aa minimum of fifteen hundred (1,500) inmates. The vendor shall submit a resume of the prososed Food Service Director as part fo its proposal The Food Service Director proposed by the vendor shall be assigned to the City of Atlanta Jail for at least one (1) year from contract date, unless an alternate experienced manager acceptable to the Corretions Chief or designee is approved. A resume of the manager and two (2) assistants shall be provied to the Corrections Chief or his designee. **Eash resume requested and supplied must be clearly identified with the position for which it is submitted. Failure to provide the information request in the manner prescribed will resul in rejection of bid.**

3. The vendor shall assign a minimum of two(2) Food Service Managers and one (1) Food Service Director to oversee and supervise all aspects of the food service operation for each shift. Eash shift shall have a minimum of one (1) Assistance Food Service Director or one (1) Food Service Manger on-site. Actual staffing shall be in compliance with the staffing level proposed by the successful vendor. Supervision shall be by a food service manager from athe opening to the closing of service. The food service managers will work on-site for a minimum of forty (40) hours per week. One day per week shall be

either Saturday or Sunday. The food service mangers will have experience in food production and human

c.  Quality and inventory control methods and standards

d.  Procedures for providing safe, sanitary and secure food service management;

e.  Specifications that will be adhered to for all food products;

f.  The grade and quality of food products which will be used in the food service operation;

g.  Operational procedures (emergency alternatives) for handling food service should on-site kitchen facilities be rendered unusable through fire, etc.;

h.  Security (utensils, knives, etc.) – Vendor is to maintain control and log-in system. **This system must comply with American Correctional Association (ACA) guidelines, recommendations and jail standards; and**

i.  The interface with maintenance staff and repair of kitchen appliances and equipment.

3.  Vendor will provide on-going, in-service training for its food service employees and inmates workers assigned to the kitchen. Training Reports, and related documentation, will be forwarded to the Corrections Chief at the end of each quarter. The vendor will also be required to maintain these records according to ACA requirements and they must be available for inspection upon request.

4.  The Staff Dining Room shall be open during the following hours:

    a.  10:00 A.M. – 2:00 P.M., Lunch
    b.  10:00 P.M. – 2:00 A.M., Dinner

    Times may vary slightly during contract period in accordance with requirements. The vendor will furnish staff to clean, maintain and operate the dining room.

5.  Procdures for dealing with inmate request, grievances and complaints, as well as staff complaints.

    Items (as stated in this RFP) if it is determined, by the City , that damages were due to abuse and/or negligence on the vendor's part.

**E.   CITY REQUIREMENTS**

1.   The Corrections Department shall be responsible for and provide the following:

   a.   The accurate and timely count of the number of meals to be serviced to the inmates. This information shall be provided with in two (2) hours of the meal to be served.

   b.   Adequate ingress and egress to all production areas.

   c.   Adequate heat, lights, ventilation and all other utilites. The City shall provide local business telephone service to the vendor at no charge. Other requirements must be provided by the Contractor, at the cost and location designated by the City.

   d.   General maintenance to the building's structure including, but not limited to, the maintenance of gas, water, sewee, ventilation, lighting, air conditioning refrigeration, duct work, floor coverings, wall and ceiling surfaces. Vendor will, at their own expense, pay for repairs or replacement costs of items, if it is determined by the City that damages were due to abuse and/or negligence on the vendor's part.

   e.   The removal of trash and garbage from the trash bin located in the designated area.

   f.   General maintenance to the building structure including, but not

   g.   Adequate preparation, storage and holding equipment including maintenance for same, however, some storage may be off-site.

   h.   Security, control and limitation of inmate movement from, to and in the food service area, including physical security of employees, suppliers and authorized visitors.

**F.   ADDITIONAL MENU REQUIREMENTS**

1.   In addition to the standards cited, the following requirements should be met:

   a.   All beef products will be equivalent in quality to USDA Instittional Meat Purchase Specificatinos

   b.   All chicken and turkey products will be USDA Grade A qualtiy.

   c.   Ground beef must meet USDA standards.

d. Bacon shall be made from a meat source other than pork.

e. All meat portion sizes are cooked weight, volume or count.

f. All fruit and vegetable poertion sizes will be drained weight.

g. Vegetable or peanut oil only is to be used as a cooking oil.

h. All milk served will be a minimum of 2% and packaged in ½ pint cartons. Expiered date milk **WILL NOT** be served.

i. Sandwiches, served other than in a hot dog or hamburger bun, will be prepared with two (2) each slices of white and/or wheat sandwich bread.

j. All condiments must be in pre-packaged individual serving packets.

k. All ice cream served must be in infividual serving packages.

l. All menus should have a minimum serving of fresh fruit and 100% juice three (3) times per week. All fresh fruits will be served sliced in thirds or quarters so to discourage inmate hoarding.

m. All menu items will be prepared according to the specifications of the Armed Forces Recipes.

n. Menus must provide a minimum of 2,700 calories daily per inmate. Meals must meet heart healthy low fat guidelines of 30% fat and 20 grams fiber.

o. Monthly menus shall be submitted to the Corrections Chief or designee for approval a minimum of two (2) weeks prior to serving date. Substitutions must also received prior approval before serving. Vendor should list the substitute items that would be provided in the event the stated menu item cannot be provided.

p. Portion abbreviations/designations used in the menu are as follows:

   1. ounce = oz
   2. each = ea
   3. slice = sl
   4. cup = c
   5. teaspoon = TSP

**3.3.   AWARD**

The award of the contract shall be made by the Atlanta City Council to the responsible vendor whose preposal is determined, upon written recommendation by the Purchasing Agent and the Corrections Chief, to be in the best interest of the City taking into consideration price and the evaluation factors set forth in the Request for Proposal.

**3.4. GENERAL INFORMATION**

The following questions relate to the specifications being propsoed. Check YES or NO for all items. Each page of this section must be completed, signed and included with the submitted Proposal.

1. Food requirements
   a. Vendor has based cost proposal on the serving of two (2) meals per day, one (1) cold meal perday, and agrees to serve meals seven (7)days per week to staff, inmates and vistors.

   YES _____        NO _____

   b. Vendor has baseds cost propsal on the serving of three (3) hot meals per day as reuired under contract with the United States Marshal Services fro Federal inmates boarded in the Atlanta Detetion Center.

   YES _____        NO _____

2. Vendor agrees to serve breakfast a maximum of twelve (12) hours from the time evening dinner meal was served.

   YES _____        NO _____

3. Vendor agrees to provide food services 365 days per year, 366 in leap year, three (3) times per day during the hours specfied in the RFP.

   YES _____        NO _____

4. Vendor states that food and food service as described in their bid meets the guidelines prescribed by the American Correctional Association, the U.S. Department of Health and Human Services Food Service Manual and all applicable federal, state and local guidelines, laws and regulations.

   YES _____        NO _____

5. Vendor agrees to have all meal/menu changed and approved by a registered dietician an minimum of every six (6) weeks, and to provide a registered medical dietician, if different from a registered dietician, on an as required basis.

YES _____     NO _____

6. Vendor has based cost proposal on the four (4) week menu's to be submitted with the proolsal.

YES _____     NO _____

7. Vendor agrees to prepare all meals for inmates on insulated trays, and that meals will arrrive to inmates with hot food at a minimum of 140 degrees Fahrenhit and cold food at a maximum of 45 dgrees Fahrenheit, and that these temperatures will not decrease below 140 drgrees Fahrenheit nor will they increase above 45 degrees Fahrenheit at the time the food is served to each inmate.

YES _____     NO _____

8. Vendor agrees that all meals will be prepard in compliace with receipes established in the current series of armed forces recipe service cards as amended, and that substitution of infividual recipes will only be with the writen consent of the Corrections Chief or Corrections Chief's designee.

YES _____     NO _____

9. Vendor will provide meals and snacks conforming to medically prescribed diets and meals conforming to special religious requirements that no additional cost.

YES _____     NO _____

10. City of Atlanta will provide approximately 4,000 insulated trays with covers. The vendor agrees to purchase replacements due to loss or damage resulting from contractor's negligence, either directly or indirectly.

YES _____     NO _____

11. The vendor agrees to provide all, or any additional of the following items necessary in the performance of the requirements contained within this document:

| A. Isulated trays | YES _____ | NO _____ |
| B. Tray drying racks | YES _____ | NO _____ |
| C. Meal delivery cart with Beverage container | YES _____ | NO _____ |

| D. Twelve (12) foot Conveyor | YES _____ | NO _____ |
| E. All Styrofoam products | YES _____ | NO _____ |
| F. All ice needed for drinks | YES _____ | NO _____ |

12. Vendor agrees to provide a meal consisting of a minimum of two (2) sandwiches, fruit and drinks to each inmate at court and/or to bindover.

YES _____     NO _____

13. Vendor agrees to prepare all meals onsite and that pre-cooked casseroles or other pre-cooked items used as entrees, outdated products, frozen fruit, frozend shipped products, egg substitutes, raw meet served and fillers such as soybeans will not be used by the vendor, with the exception of USDA commodity provisions.

YES _____     NO _____

14. The vendor agrees to use all donated USDA commodities and to creit the City, at fair market value for those items. The vendor will not add chareges of any kin for the handling, storage, and use of commodities.

YES _____     NO _____

15. The vendor will use the following food products, as required, to maintain a high qualtiy meal to the City's inmate polution. They are as follows:

A. Ground beef, cube steak, luncheon meats and some chicken and fish products.

YES _____     NO _____

B. Frozen concentrate juices

YES _____     NO _____

C. Fresh or froxen potato products

YES _____     NO _____

D. Canned vegetables when fresh are not available

YES _____     NO _____

E. Fresh or frozen scrambled eggs

YES _____     NO _____

F. Fresh or frozen desserts such as ice cream, pies, cakes, etc.

YES _____     NO _____

16. Vendor agrees to include in the staff lunch and dinner meal the following additions to the menu served to the inmates:

A. One (1) additional hot meat and vegetable.

YES _____     NO _____

B. Self service salad bar with a variety of condiments, hamburgers, hot dogs, and sandwich bar provided daily.

YES _____     NO _____

C. Selection of desserts including pies, layer cakes, puddings and frozen confections, and frozen yogurt.

YES _____     NO _____

D. Assortment of beverages to include soft drinks, whole and skim milk, chocolate milk, fruit punch, iced tea, hot tea and coffee daily.

YES _____     NO _____

E. Miscellanrous items such as ketchup, mustar, mayonnaise, salt, pepper, sugar and cream.

YES _____     NO _____

17. Vendor agrees to maintain a minimum food inventory level of five (5) days.

YES _____     NO _____

18. Vendor agrees that inmates will not be allowed to work in the food service area (exceptiong those inmates being trained in the culinary arts/jobs progam) and that the vendor will be responsible for staffing and maintaing the kitchen facility and the staff dining room.

YES _____     NO _____

19. Vendor will provide industy-standard food service uniforms for all employees.

YES _____     NO _____

20. Vendor will purchase and provide a separate invoice for the coffee and supplies for authorized staff of the Corrections Chief's department.

Page **15** of **25**

YES _____      NO _____

21. Vendor will provide catered special event meals with a minimum forty-eight (48) hour notice which will be added to the weekly meal count and billed as additional meals at the contract rate.

YES _____      NO _____

22. Vendor will provide, maintain, and staff a meal ticket sales system for guest.

YES _____      NO _____

23. Vendor will provide meals to those inmates involved in trails and/or bond hearings and those additional inamtes processed after the evening meal.

YES _____      NO _____

24. Vendor agrees not to serve pork, in any form, in the inmate meals; however, pork can be utilized in meals served in the staff dinning room.

YES _____      NO _____

25. Vendor has included, in the proposal, the serving of special holiday meals at contract prices.

YES _____      NO _____

C.   Other requirements

1.   Vendor will provide all consumable supplies and food products which are required for the food service operation.

YES _____      NO _____

2.   Vendor is responsible for complete cleaning, housekeeping and vector control of the food service preparation areas,including staff dining room and storage areas.

YES _____      NO _____

A.   Vendor will maintain standard of sanitation required by state, local and A.C.A. regulations and standards and will be met on a ongoing basis.

YES _____      NO _____

B.   Vendor will place all trash and garbage in trash bin(s) locate din the designated area.

YES _____     NO _____

C. Vector control will meet the standards found in the US Department of Health and Human Services **Food Service Manual.**

YES _____     NO _____

3. Vendor will require all employees assigned to duty at the jail to submit to health examinations as required by law.

YES _____     NO _____

A. Vendor will submit evidence of compliance to the above upon request.

YES _____     NO _____

B. Vendor will assure all employees have valid City of Atlanta health certificates and have been approved prior to being allowed to work in the facility.

YES _____     NO _____

4. Vendor will secure and pay all federal, state and local licenses, permits and fees required for operation, and pay any slaes taxes, use and/or personal property tax on the vendor's equipment, which are imposed on the food service operation.

YES _____     NO _____

6. Vendor agrees to make the fullest use of USDA donated commodities and to credit the City at fair market value of foods used.

YES _____     NO _____

A. Vendor will handle, store and prepare all commodities in accordance with USDA regulations.

YES _____     NO _____

B. Vendor will take a weekly inventory of all USDA Commodities.

YES _____          NO _____

C.  Vendor will generate a weekly report on all USDA donated commodities to include commodities on hand at the beginning of each week, the quantity used, the quantity lost due to spoilage, theft or shrinkage and the balance on had at the end of the week.

YES _____          NO _____

D.  Vendor agrees to maintain and store the above reprot for the duration of the contract period, after which all reports will eb turned over to the City.

YES _____          NO _____

E.  Vendor agrees to credit all donated commodities at the fair market value.

YES _____          NO _____

7.   Vendor shall provide to the Corrections Chief's Department of monthly list of staff vacancies. Credits for each vacancy, at the current salary rate, shall be made to the weekly invoice for all position vacant for longer than fifteen (15) days.

YES _____          NO _____

8.   Vendor will keep records of sales and meal count records in connection with the food services and will supply a copy to the Corrections Chief on a weekly hasis. Also, these records will be available for audit, by the City at the time during regualr working hours.

YES _____          NO _____

A. Vendor will not use facilites or equipment to prepare food for other agencies, or persons, other than City of Atlanta, without approval by the Corrections Chief.

YES _____          NO _____

B. Vendor agrees that facility inspections will be made with or without advance notice to the vendor.

YES _____          NO _____

C. Any and all inspections of kitchen facilities by City and/or state health agencies must achieve satisfactory ratings.

YES _____ NO _____

9. The vendor has a minimum of three (3) years experience in jail/correctional food service for which like services were provided with an inamte population of two thousand (2,000) inmates.

YES _____ NO _____

10. Vendor will be responsible to remove, at their expense, all waste products, deep fryer grease etc. Any such waste products must be disposed of in accordance to helth regulations. All short time storage must be within container that meet health codes.

YES _____ NO _____

11. Vendor will be responsible for emptying, at their expense, the frease trap at least bi-monthly and/or upon need if sooner. Any and all routine cleanign and maintenance will also be the vendor's responsibility.

YES _____ NO _____

12. Any and all bills, invoices and general business matters needed by the vendor will be mailed to the vendor's corporate address and not to the City jail or other City addresses.

YES _____ NO _____

### D. Staff Requirements

1. Vendor will obtain backgroud clearance from the Corrections Chief's department on all employees who will work in the jail facility. Prior clearance is required for all employees before they may report for duty.

YES _____ NO _____

2. Vendor agrees to have all employees comply with the jail's security policies and procedures.

YES _____ NO _____

3. The food service director provided by the vendor has a minimum of five (5) years experience in jail/corrections food service as described in the RFP.

YES _____ NO _____

4.  The food service director will be assigned to the City of Atlanta Jail for a minimum of one (1) year from the contract start date; alternates must be confirmed by the City.

YES _____ NO _____

5.  Vendor has included resumes, clearly marked as to position, of the manger and two (2) food service managers' positions.

YES _____ NO _____

6.  Vendor agrees to provide one (1) food service operations manager (on-site) per shift.

YES _____ NO _____

7.  Vendor afrees to staff each shift with a minimum of one(1) food service manager position.

YES _____ NO _____

8.  Vendor agrees supervision will be provided by food swervice management (on-site) during the complete hours of operation.

YES _____ NO _____

9.  Vendor will provide one (1) full time registered dietician (on-site) on a full time basis.

YES _____ NO _____

10. Vendor will provide one (1) registered medical dietician for consultation on a regular basis.

YES _____ NO _____

11. Vendor has supplied a staffing chart will all positions labeled, their corresponding salariew, labor rates, and the hours/shifts to which they will be assigned. This is to include their benefit package.

YES _____ NO _____

E.  **Operational requirements**

1.  The vendor has addressed, in as much detail as possible, the following:

A. Procedures for interaction with the meal delivery personnnel of the Corrections Chief's department, including inmate workers.

YES _____          NO _____

B. Procedures for receiving and reporting accurate meal counts consistent with jail staff.

YES _____          NO _____

C. Quality and inventory control methods and standards.

YES _____          NO _____

D. Procedures for providing safe, sanitary and secure food service management.

YES _____          NO _____

E. Specifications for all food products.

YES _____          NO _____

F. The grade and quality of food products to be used in the food service operations.

YES _____          NO _____

G. Operational procedures and emergency alternatives for handling food service operation in the event on-site kitchen facilities rendered unusable.

YES _____          NO _____

H. Security procedures regarding (tools) utensils, knives, etc. to include control/log-in system, regular shift inventories of all tools, daily status reports, and emergency reports **(within one (1) hour of loss of any tools).** Tool control must meet the requirements as established by ACA.

YES _____          NO _____

I. Interfacing with maintenance staff, to include repair of kitchen facilities and equipment that City of Atlanta is responsible to repair. (As identified in the RFP)

YES _____          NO _____

J.  Operational procedures to immediately respond to FDA, USDA and Georgia Department of Agriculture food product recalls, alerts, and/or bulletins, so to ensure that all food products are free from defect or contaminiation.

YES _____          NO _____

2.  General history, description and status of the company, includgin financial statements dated FY2008 or newer.

YES _____          NO _____

3.  On-going in-service training for food service employees and inmate workers. All such activities must be coordinated with the jail director and other appropriate security staff.

YES _____          NO _____

4.  Service hours for the staff dining room as indicated in the RFP to include staff to clean, maintain, and operate the officer's dinig room.

YES _____          NO _____

5.  Procedures for inmate complaints, request, frievances and also staff complaints, from initial complaint ro resolution.

YES _____          NO _____

6.  Any additional equipment necessary for the efficient food service operation.

YES _____          NO _____

7.  Procedures for the weekly billing for food service.

YES _____          NO _____

F.  **Additional menu requirements**

1.  All beef products used are equivalent in quality to USDA institutional meat purchase specificatins.

YES _____          NO _____

2.  All chicken and turkey products will be USDA grade A quality.

YES _____          NO _____

3. Ground beef meets USDA standards.

YES _____          NO _____

4. Bacon is made froma meat source other than pork.

YES _____          NO _____

5. All meat portion sizes are cooked weight, volum or count.

YES _____          NO _____

6. All fruti and vegetable portions sizes will be drained weight.

YES _____          NO _____

7. Cooking oil will be vegetable or peanut oil only.

YES _____          NO _____

8. All milk served will be minimum of 2% and packaged in ½ pint cartons, expired date milk will not be used.

YES _____          NO _____

9. All sandwiches, other than those served in hamburger or hot dog bums will be prepared two (2) slices each of white and/or wheat sandwich style bread.

YES _____          NO _____

10. All condiments are pre-packaged individual serving packets.

YES _____          NO _____

11. Ice cream served will be in individual serving packaging.

YES _____          NO _____

12. Fresh fruit and 100% fruit juice will be including in menues a minimum of three (3) times per week. All fresh fruits will be servied sliced in thirds or quarters so to discourage inmate hoarding.

YES _____    NO _____

13. All menu items will be prepared in accordance with armed forces recipes.

YES _____    NO _____

14. Menus provide a minimum of 2,700 calories daily, per inmate. Meals must meet heart healthy low fat guidelines of 30% fat and 20grams fiber.

YES _____    NO _____

15. Monthly menus will be submitted to the Corrections Chief for approval a minimum of two(2) weeks prior to the serving date.

YES _____    NO _____

16. Any substitutions in menues and/or food products will receive approval from the Corrections Chief prior to serving.

YES _____    NO _____

17. Vendor has listed the substitute items that would be provided in the event the stated menu item cannot be provided.

YES _____    NO _____

## 3.5    STORAGE CAPACITY AND U.S.D.A COMMODITY VALUE FOR 1997 ONSITE STORAGE

Listed below is the type and the dimensions of storage space which will be supplied by the City. The storage areas are found onsite, both inside the food service area and outside. This information is provided as an aid to prospective biddrs in determining the type and quantity of additional storage, if any, that will be necessary in the provision of this contract.

The following storage space is found inside the jail facility within the food service area:

| QUANTITY | TYPE | DIMENSIONS |
|---|---|---|
| 1 each | Dry Storage | 32'-4"X19'-9" |
| 1 each | Dry Storage | 14'X12' |
| 2 each | Walk-In Freezer | 14'-8"X5'-3" |
| 1 each | Walk-In Cooler | 15'-5"X11'-2" |
| 1 each | Walk-In Cooler | 13'X10'-4" |
| 1 each | Walk-In Cooler | 14'-8"X7'-8" |
| 1 each | Walk-In Cooler | 11'-8 ½"X9'-9" |

The following storage space is found outside the jail facility, approximately thirty (30) feet from the food service area loading dock:

| 1 each | Walk-In Freezer | 17'-8 ½"X9'-9" |
|---|---|---|

### 3.6.  U.S.D.A. COMMODITY VALUE

The dollar value of commodities utilized through the U.S. Department of Agriculture

Dry Storage...................................................................................................$50,000.00

Cold Storage..................................................................................................$50,000.00

## APPENDIX B: INSURANCE AND BONDING REQUIREMENTS

### APPENDIX B
### INSURANCE & BONDING REQUIREMENTS
### FOOD SERVICES AT ATLANTA DETENTION CENTER

A.    Preamble

The following requirements apply to all work under the agreement. Compliance is required by all Contractors/Consultants. **To the extent permitted by applicable law, the City of Atlanta ("City") reserves the right to adjust or waive any insurance or bonding requirements contained in this Appendix B and applicable to the agreement.**

1.    Evidence of Insurance Required Before Work Begins

**No work under the agreement may be commenced until all insurance and bonding requirements contained in this Appendix B, or required by applicable law, have been complied with and evidence of such compliance satisfactory to City as to form and content has been filed with City.** Contractor/Consultant must provide City with a Certificate of Insurance that clearly and unconditionally indicates that Contractor/Consultant has complied with all insurance and bonding requirements set forth in this Appendix B and applicable to the agreement. In accordance with the solicitation documents applicable to the agreement at the time Contractor/Consultant submits to City its executed agreement, Contractor/Consultant must satisfy all insurance and bonding requirements required by this Appendix B and applicable by law, and provide the required written documentation to City evidencing such compliance. In the event that Contractor/Consultant does not comply with such submittal requirements within the time period established by the solicitation documents applicable to the agreement, City may, in addition to any other rights City may have under the solicitation documents applicable to the agreement or under applicable law, make a claim against any bid security provided by Contractor/Consultant.

2.    Minimum Financial Security Requirements

All companies providing insurance required by this Appendix B must meet certain minimum financial security requirements. These requirements must conform to the ratings published by A.M. Best & Co. in the current Best's Key Rating Guide - Property-Casualty. The ratings for each company must be indicated on the documentation provided by Contractor/Consultant to City certifying that all insurance and bonding requirements set forth in this Appendix B and applicable to the agreement have been unconditionally satisfied.

For all agreements, regardless of size, companies providing insurance or bonds under the agreement must meet the following requirements:

- i)    Best's Rating not less than A-,
- ii)    Best's Financial Size Category not less than Class IX, and
- iii)    Companies must be authorized to conduct and transact insurance contracts by the Insurance Commissioner, State of Georgia.
- iv)    All bid, performance and payment bonds must be underwritten by a U.S. Treasury Circular 570 listed company.

If the issuing company does not meet these minimum requirements, or for any other reason is or becomes unsatisfactory to City, City will notify Contractor/Consultant in writing. Contractor/Consultant must promptly obtain a new policy or bond issued by an insurer acceptable to City and submit to City evidence of its compliance with these conditions.

Contractor/Consultant's failure to comply with all insurance and bonding requirements set forth in this Appendix B and applicable to the agreement will not relieve Contractor/Consultant from any liability under the agreement. Contractor/Consultant's obligations to comply with all insurance and bonding requirements set forth in Appendix B and applicable to the agreement will not be construed to conflict with or limit Contractor's/Consultant's indemnification obligations under the agreement.

### 3.   Insurance Required for Duration of Contract

All insurance and bonds required by this Appendix B must be maintained during the entire term of the agreement, including any renewal or extension terms, and until all work has been completed to the satisfaction of City.

### 4.   Notices of Cancellation & Renewal

Contractor/Consultant must, within 2 business days of receipt, forward to the City, at the address listed below by mail, hand-delivery or facsimile transmission, all notices received from all insurance carriers providing insurance coverages under this Agreement and Appendix B that concern the proposed cancellation, or termination of coverage of any insurance policies. All notices under this provision shall be sent to:

> 68 Mitchell St. Suite 9100
> Atlanta, GA 30303
> Facsimile No. (404) 658-7450

Confirmation of any mailed notices must be evidenced by return receipts of registered or certified mail.

Contractor/Consultant shall provide the City with evidence of required insurance prior to the commencement of this agreement, and, thereafter, with a certificate evidencing renewals or changes to required policies of insurance at least fifteen (15) days prior to the expiration of previously provided certificates.

### 5.   Certificate Holder

The **City of Atlanta** must be named as certificate holder. All notices must be mailed to the attention of **Enterprise Risk Management** at **68 Mitchell Street, Suite, 9100, Atlanta, Georgia 30303.**

### 6.   Additional Insured Endorsements

The City must be covered as Additional Insured under all insurance (except worker's compensation and professional liability) required by this Appendix B and

am                                                                                                   2

such insurance must be primary with respect to the Additional Insured. Confirmation of this must unconditionally appear on any **Certificate of Insurance** provided by Contractor/Consultant as evidence of its compliance with this Appendix B. **Contractor/Consultant must also submit to City an Additional Insured Endorsement evidencing City's rights as an Additional Insured for each policy of insurance under which it is required to be an additional insured pursuant to this Appendix B . The City shall not have liability for any premiums charged for such coverage.**

7.    Mandatory Sub-consultant Compliance

Contractor/Consultant    must    require    and    ensure    that    all subcontractors/subconsultants at all tiers to be sufficiently insured/bonded.

B.    Workers' Compensation and Employer's Liability Insurance

Contractor/Consultant must procure and maintain Workers' Compensation and Employer's Liability Insurance in the following limits to cover each employee who is or may be engaged in work under the agreement.

**Workers' Compensation/Employer's Liability. . . . . . . . Statutory
Bodily Injury by Accident/Disease $100,000 each accident
Bodily Injury by Accident/Disease $100,000 each employee
Bodily Injury by Accident/Disease $500,000 policy limit**

C.    Commercial General Liability Insurance

Contractor/Consultant must procure and maintain Commercial General Liability Insurance in an amount not less than **$1,000,000 per occurrence subject to a $2,000,000 general aggregate per project**. The following indicated extensions of coverage must be provided:

☒    Contractual Liability
☒    Broad Form Property Damage
☒    Personal Injury
☒    Advertising Injury
☒    Fire Legal Liability
☒    Medical Expense
☒    Premises Operations
☒    Products – Completed Operations
☒    Independent Contractors and Subcontractors
☒    Additional Insured Endorsement* (written on a primary, non-contributing basis)
☒    Waiver of Subrogation in favor of City

D.    Commercial Automobile Liability Insurance

Contractor/Consultant must procure and maintain Automobile Liability Insurance in an amount not less than **$500,000 Bodily Injury and Property Damage combined single limit**. The following extensions of coverage must be provided:

☒     Owned, Non-owned & Hired Vehicles

☒     Additional Insured Endorsement* (written on a primary, non-contributing basis)

☒     Waiver of Subrogation in favor of City

If Contractor/Consultant does not own any automobiles in the corporate name, hired and non-owned vehicle coverage will apply and must be endorsed on either Contractor/Consultant's personal automobile policy or the Commercial General Liability coverage required under this Appendix B.

### E.    Performance and Payment Bond

Contractor/Consultant shall furnish a Payment Bond and a Performance Bond to the City in an amount equal to **100 percent of the total contract value** and for the duration of the entire term.

The person executing the Bonds on behalf of the surety shall file with the Bonds a general power of attorney unlimited as to amount and type of bonds covered by such power of attorney, and certified by an official of said surety.



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 03/30/2012 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Kristin May | | |
|---|---|---|---|
| Aon Risk Services, Inc. of Florida 1001 Brickell Bay Drive, Suite 1100 Miami, FL 33131 | PHONE (A/C, No. Ext): 305-961-5936 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Lexington | | 19437 |
| INSURED Trinity Services Group, Inc., and see additional Named 380 Scarlet Blvd. Insureds below. Oldsmar FL 34677 | INSURER B : Zurich | | 40142 |
| | INSURER C : Chartis | | 19402 |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | X | | 065463557 | 3/29/12 | 3/29/13 | EACH OCCURRENCE | $ 1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | POLICY PRO-JECT LOC | | | | | | | $ |
| B | AUTOMOBILE LIABILITY | X | | BAP387853600 | 3/29/12 | 3/29/13 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | X UMBRELLA LIAB X OCCUR | X | | BE14505269 | 3/29/12 | 3/29/13 | EACH OCCURRENCE | $ 25,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 25,000,000 |
| | DED RETENTION $ | | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | WC387853500 | 3/29/12 | 3/29/13 | X WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

Named Insureds: TSG Parent Holdings, Inc., TSG Acquisitions, Inc., Trinity Services Group, Inc., Trinity Services I, LLC.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| For Information Only | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE Aon Risk Services, Inc. of Florida |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)     The ACORD name and logo are registered marks of ACORD

## Form 5: Proof of Insurance Coverage and Bonding Capacity

### PROJECT; FC-5441; FOOD SERVICES AT THE ATLANTA DETENTION CENTER

### INSURANCE COVERAGE AND BONDING CAPACITY

### CITY OF ATLANTA, GEORGIA

Proponent shall provide the City with satisfactory evidence of the Proponent's ability to obtain the required insurance and bonds from (a) company(ies) satisfactory to the City and licensed by the Insurance Commissioner of the State of Georgia to transact Surety business in the State of Georgia. Proponent shall submit this form with its Proposal.

**SURETY:**

COMPANY NAME:　Arch Insurance Company

COMPANY ADDRESS:　300 Plaza Three

　　　　　　　　　Jersey City, NJ 07311-1107

CONTACT NAME AND PHONE: Shannon Bowman, VP of Underwriting

BONDING CAPACITY IS:　$25,000,000　　404-682-3666

**INSURER:**

COMPANY NAME:　AON RISK SERVICES, INC. OF FLORIDA

COMPANY ADDRESS:　1001 Brickell Bay Drive, Suite 1100

　　　　　　　　　Miami, FL 33131

CONTACT NAME AND PHONE: Kristin May, 305-961-5936

*Proponent is required to submit a letter from the Company providing insurance and bonds for this project certifying that the Company will provide insurance and bonds in accordance with the terms set forth in Appendix B.*

Date:　4-16-2012

**Corporate Proponent:**
**[Insert Corporate Name]**

By:

Name:　Larry G. Vaughn

Title:　CEO

**Corporate Secretary/Assistant**
**Secretary (Seal)**

20

**Non-Corporate Proponent:**
**[Insert Proponent Name]**

By:_____
Name:_____
Title:_____



**Notary Public (Seal)**
**My Commission Expires:** 2-3-2014

Notary Public State of Florida
Nancy A Climo
My Commission DD941781
Expires 02/03/2014

21

# PAYMENT AND PERFORMANCE BONDS

# Payment Bond

## INSTRUCTIONS

1. This form is required for use in connection with the Agreement identified on its face. There shall be no deviation from this form without approval by the City.

2. The full legal name and business address of the Principal shall be inserted in the space designated "Principal" on the face of the form. The bond shall be signed by an authorized person. Where such person is signing in a representative capacity (e.g., an attorney-in-fact), but is not a member of the firm, partnership, or joint venture, or an office of the corporation involved, evidence of this authority must be furnished.

3. Corporation executing the bond as surety must be among those appearing on the U.S. Treasury Department's most current list of approved sureties and must be acting within the amounts and limitations set forth therein.

4. Corporate surety shall be duly authorized by the Commissioner of Insurance of the State of Georgia to transact surety business in the State of Georgia.

5. Do not date this bond. The City will date this bond the same date or later than the date of the Agreement.

6. The Surety shall attach a duly authorized power-of-attorney authorizing signature on its behalf of any attorney-in-fact.

7. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Seal."

8. The name of each person signing this bond shall be typed or printed in the space provided.

Bond no. SU1113916

# Performance Bond

"City" City of Atlanta, Georgia
"Project"     Food Services for Atlanta Detention Center
"FC No."     5441
"Principal" (Legal Name and Business Address)     Trinity Food Services Group, Inc.
                                                                                    3435 Kingsboro Road, NE, Suite 1503
                                                                                    Atlanta, Georgia 30326

Type of Organization ("X" one): _____ Individual
                                                    _____ Partnership
                                                    _____ Joint Venture
                                                    X__ Corporation

"Surety:"     (Name and Business Address)                    Arch Insurance Company

                                                                                    300 Plaza Three

                                                                                    Jersey City, NJ 07311

                                                                                    duly authorized by the Commissioner of Insurance of
                                                                                    the State of Georgia to transact surety business in the
                                                                                    State of Georgia.

"Agreement:"     Agreement between Principal and City, dated _____ day of _____, 201___, regarding
                          performance of Work relative to the Project.

"Penal Sum:"     One Million One Hundred Thousand Dollars ($1,100,000.00)

KNOW ALL MEN BY THESE PRESENTS, that we, the Principal and Surety hereto, as named above, are
held and firmly bound to the City in the above Penal Sum for the payment of which well and truly to be
made we bind ourselves, our heirs, executors, administrators, successors, jointly and severally.

WHEREAS, the Principal and the City entered into the Agreement identified above;

NOW, THEREFORE, the conditions of this obligation are such that if the Principal shall faithfully and fully
comply with, perform and fulfill all of the undertakings, covenants, conditions and all other of the terms and
conditions of said Agreement, including any and all duly authorized modifications of such Agreement,
within the original term of such Agreement and any extensions thereof, which shall include, but not be
limited to any obligations created by way of warranties and/or guarantees for workmanship and materials
which warranty and/or guarantee may extend for a period of time beyond completion of said Agreement,
this obligation shall be void; otherwise, of full force and effect.

And the Surety to this bond, for value received, agrees that no modification, change, extension of time,
alteration or addition to the terms of the Agreement or to the Work to be performed thereunder shall in any
wise affect its obligation on this bond, and it does hereby waive notice of any such modification, change,
extension of time, alteration or addition to the terms of the Agreement or the Work.



FC-5441-Food Services for Atlanta Detention Center
Contract Agreement

Bond no. SU1113916

It is agreed that this bond is executed pursuant to and in accordance with the provision of O.C.G.A. Sections 13-10-1 and 36-82-101, *et seq.* and is intended to be and shall be construed to be a bond in compliance with the requirements thereof, though not restricted thereto.

IN WITNESS WHEREOF, the Principal and the Surety have caused these presents to be duly signed and sealed this ___3RD___ day of ___OCTOBER___, 201 2.

**PRINCIPAL:** TRINITY SERVICES GROUP INC.

President/Vice President (Sign)

President/Vice President (Type or Print)

Attested to by:

Secretary/Assistant Secretary (Seal)

**SURETY:** Arch Insurance Company

By: _____
   Attorney-in-Fact (Sign)

   KD Conrad
   Attorney-in-Fact (Type or Print)

**APPROVED AS TO FORM**

_____
Associate/Assistant City Attorney

**APPROVED**

_____
City's Chief Financial Officer

# Performance Bond

---

### INSTRUCTIONS

1. This form is required for use in connection with the Agreement identified on its face. There shall be no deviation from this form without approval by the City.

2. The full legal name and business address of the Principal shall be inserted in the space designated "Principal" on the face of the form. The bond shall be signed by an authorized person. Where such person is signing in a representative capacity (e.g., an attorney-in-fact), but is not a member of the firm, partnership, or joint venture, or an office of the corporation involved, evidence of this authority must be furnished.

3. Corporation executing the bond as surety must be among those appearing on the U.S. Treasury Department's most current list of approved sureties and must be acting within the amounts and limitations set forth therein.

4. Corporate surety shall be duly authorized by the Commissioner of Insurance of the State of Georgia to transact surety business in the State of Georgia.

5. Do not date this bond. The City will date this bond the same date or later than the date of the Agreement.

6. The Surety shall attach a duly authorized power-of-attorney authorizing signature on its behalf of any attorney-in-fact.

7. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Seal."

8. The name of each person signing this bond shall be typed or printed in the space provided.

---

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**State of California**

**County of Los Angeles**

On ____OCT 0 3 2012____ before me, <u>James Ross</u> , <u>Notary Public</u>, personally appeared <u>KD Conrad</u> who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JAMES ROSS
COMM. #1984813
Notary Public · California
Los Angeles County
My Comm. Expires July 12, 2016

Signature _____

James Ross, Notary Public

(Seal)

Bond no. SU1113916

# Payment Bond

"City" City of Atlanta, Georgia
"Project"     Food Services for Atlanta Detention Center
"FC No."      5441
"Principal" (Legal Name and Business Address)     Trinity Food Services Group, Inc.
                                                   3435 Kingsboro Road, NE, Suite 1503
                                                   Atlanta, Georgia 30326

Type of Organization ("X" one):     _____ Individual
                                    _____ Partnership
                                    _____ Joint Venture
                                    __X__ Corporation

"Surety:"     (Name and Business Address)     Arch Insurance Company

                                              300 Plaza Three

                                              Jersey City, NJ 07311

                                              duly authorized by the Commissioner of Insurance of
                                              the State of Georgia to transact surety business in the
                                              State of Georgia.

"Agreement:"     Agreement between Principal and City, dated _____ day of _____, 201__, regarding
                 performance of Work relative to the Project.

"Penal Sum:"     One Million One Hundred Thousand Dollars ($1,100,000.00)

KNOW ALL MEN BY THESE PRESENTS, that we, the Principal and Surety hereto, as named above, are
held and firmly bound to the City in the above Penal Sum for the payment of which well and truly to be
made we bind ourselves, our heirs, executors, administrators, successors, jointly and severally.

WHEREAS, the Principal and the City entered into the Agreement identified above;

NOW, THEREFORE, the conditions of this obligation are such that if the Principal shall make payment of
all Subcontractors and all persons supplying labor, Materials, machinery and Equipment for the
performance of said work, this obligation shall be void; otherwise of full force and effect.

And the Surety to this bond, for value received, agrees that no modification, change, extension of time,
alteration or addition to the terms of the Agreement or to the Work to be performed thereunder shall in any
wise affect its obligation on this bond, and it does hereby waive notice of any such modification, change,
extension of time, alteration or addition to the terms of the Agreement or the Work.

It is agreed that this bond is executed pursuant to and in accordance with the provisions of Section 13-10-1
and 36-82-101 *et seq.* and is intended to be and shall be construed to be a bond in compliance with the
requirements thereof, though not restricted thereto.

Bond no. SU1113916

IN WITNESS WHEREOF, the Principal and the Surety have caused these presents to be duly signed and sealed this _3rd_ day of _OctoBER_, 201_7_.

PRINCIPAL: _TRINITY SERVICES GROUP, INC_

President/Vice President (Sign)

President/Vice President (Type or Print)

Attested to by:

Secretary/Assistant Secretary (Seal)

SURETY: Arch Insurance Company

By:

Attorney-in-Fact (Sign)
KD Conrad

Attorney-in-Fact (Type or Print)

**APPROVED AS TO FORM**

Associate/Assistant City Attorney

**APPROVED**

City's Chief Financial Officer

FC-5441-Food Services for Atlanta Detention Center
Contract Agreement

# Payment Bond

---

## INSTRUCTIONS

1. This form is required for use in connection with the Agreement identified on its face. There shall be no deviation from this form without approval by the City.

2. The full legal name and business address of the Principal shall be inserted in the space designated "Principal" on the face of the form. The bond shall be signed by an authorized person. Where such person is signing in a representative capacity (e.g., an attorney-in-fact), but is not a member of the firm, partnership, or joint venture, or an office of the corporation involved, evidence of this authority must be furnished.

3. Corporation executing the bond as surety must be among those appearing on the U.S. Treasury Department's most current list of approved sureties and must be acting within the amounts and limitations set forth therein.

4. Corporate surety shall be duly authorized by the Commissioner of Insurance of the State of Georgia to transact surety business in the State of Georgia.

5. Do not date this bond. The City will date this bond the same date or later than the date of the Agreement.

6. The Surety shall attach a duly authorized power-of-attorney authorizing signature on its behalf of any attorney-in-fact.

7. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Seal."

8. The name of each person signing this bond shall be typed or printed in the space provided.

---



FC-5441-Food Services for Atlanta Detention Center
Contract Agreement

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**State of California**

**County of Los Angeles**

On ___OCT 0 3 2012___ before me, <u>James Ross , Notary Public</u>, personally appeared <u>KD Conrad</u> who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JAMES ROSS
COMM. #1984813
Notary Public - California
Los Angeles County
My Comm. Expires July 12, 2016

Signature _____

**James Ross, Notary Public**

**(Seal)**

AIC 0000027610

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON BLUE BACKGROUND.**

This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated. Not valid for Mortgage, Note, Loan, Letter of Credit, Bank Deposit, Currency Rate, Interest Rate or Residential Value Guarantees.

# POWER OF ATTORNEY

Know All Persons By These Presents:

That the Arch Insurance Company, a corporation organized and existing under the laws of the State of Missouri, having its principal administrative office in Jersey City, New Jersey (hereinafter referred to as the "Company") does hereby appoint:

Edward Speck, Jeanette Conley, Kristin Conrad, Marina Tapia, Breane Barrera, Lori Branigan and Lori Calvo (Los Angeles, CA) (EACH)

its true and lawful Attorney(s)-in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as its act and deed:

Any and all bonds, undertakings, recognizances and other surety obligations, in the penal sum not exceeding Ninety Million Dollars ($90,000,000.00).

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

The execution of such bonds, undertakings, recognizances and other surety obligations in pursuance of these presents shall be as binding upon the said Company as fully and amply, to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal administrative office in Jersey City, New Jersey.

This Power of Attorney is executed by authority of resolutions adopted by unanimous consent of the Board of Directors of the Company on September 15, 2011, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or the Executive Vice President, or any Senior Vice President, of the Surety Business Division, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them subject to the limitations set forth in their respective powers of attorney, to execute on behalf of the Company, and attach the seal of the Company thereto, bonds, undertakings, recognizances and other surety obligations obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the unanimous consent of the Board of Directors of the Company on September 15, 2011:

"VOTED, That the signature of the Chairman of the Board, the President, or the Executive Vice President, or any Senior Vice President, of the Surety Business Division, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to the resolution adopted by the Board of Directors on September 15, 2011, and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company.

00ML0013 00 03 03

Page 1 of 2

Printed in U.S.A.






**Exhibit B**



# CITY OF ATLANTA

Kasim Reed
Mayor

SUITE 1900
55 TRINITY AVENUE, SW
ATLANTA, GA 30303
(404) 330-6204  Fax:  (404) 658-7705
Internet Home Page: www.atlantaga.gov

DEPARTMENT OF PROCUREMENT
Adam L. Smith, Esq., CPPO, CPPB, CPPM, CPP,
CIPC, CISCC, CIGPM, CPPC
Chief Procurement Officer
asmith@atlantaga.gov

April 19, 2016

Mr. Chris Robinson
District Manager
Trinity Services Group, Inc.
5643 Rodney Court
Stone Mountain, GA  30087

**VIA EMAIL: chrisr@trinityservicesgroup.com**

Re:     **FC-5441, Food Services for Atlanta Detention Center (Renewal No. 1)**

Dear Mr. Robinson:

Pursuant to Section 2 of the Agreement, please accept this letter as official notice from the City of Atlanta (the "**City**") that it has exercised its first option to renew the above-referenced Agreement for an additional one (1) year term, pursuant to Resolution No. 16-R-3358, which shall be effective beginning upon the expiration of the prior term of the Agreement, being March 17, 2016, and continue for a period of one year, ending on March 16, 2017.

Additionally, the City has appropriated additional funding for the period of this renewal, being year two (2) of the Agreement, in an amount not to exceed One Million Three Hundred Thousand Dollars and No Cents ($1,300,000.00). This amount will be considered in addition to any unexpended funds from year one (1) of the Agreement, as the "Maximum Payment Amount" defined under the Agreement. Year two (2) funding was expressly authorized by the City, pursuant to Resolution No. 16-R-3358, a copy of which is enclosed for your reference.

Thank you for your continued work with the City of Atlanta.

Sincerely,

Adam L. Smith

ALS/sb

Enclosure



**Exhibit C**



# CITY OF ATLANTA

| Kasim Reed | SUITE 1900 | DEPARTMENT OF PROCUREMENT |
|---|---|---|
| Mayor | 55 TRINITY AVENUE, SW | Adam L. Smith, Esq., CPPO, CPPB, CPPM, CPP, |
| | ATLANTA, GA 30303 | CIPC, CISCC, CIGPM, CPPC |
| | (404) 330-6204  Fax: (404) 658-7705 | Chief Procurement Officer |
| | Internet Home Page: www.atlantaga.gov | asmith@atlantaga.gov |

January 26, 2017

Mr. Chris Robinson                          **VIA EMAIL: chrisr@trinityservicesgroup.com**
District Manager
Trinity Services Group, Inc.
5643 Rodney Court
Stone Mountain, GA  30087

      **Re:    FC-5441, Food Services for Atlanta Detention Center (Renewal No. 2)**

Dear Mr. Robinson:

      Pursuant to Section 2 of the Agreement, please accept this letter as official notice from the City of Atlanta (the "**City**") that it has exercised its first option to renew the above-referenced Agreement for an additional one (1) year term, pursuant to Resolution No. 17-R-3056, which shall be effective beginning upon the expiration of the prior term of the Agreement, being March 17, 2017, and continue for a period of one year, ending on March 16, 2018.

      Additionally, the City has appropriated additional funding for the period of this renewal, being year five (5) of the Agreement, in an amount not to exceed One Million Three Hundred Thousand Dollars and No Cents ($1,300,000.00). This amount will be considered in addition to any unexpended funds from year four (4) of the Agreement, as the "Maximum Payment Amount" defined under the Agreement. Year five (5) funding was expressly authorized by the City, pursuant to Resolution No. 17-R-3056, a copy of which is enclosed for your reference.

      Thank you for your continued work with the City of Atlanta.

            Sincerely,

            Adam L. Smith

ALS/cjs

Enclosure

**<u>Exhibit D</u>**

**TRINITY SERVICES
GROUP, INC.**

February 20, 2017

City of Atlanta
Department of Procurement
Attn: Adam L Smith, Esq., Chief Procurement Officer
55 Trinity Avenue, Suite 1900
Atlanta, Georgia 30303

Re: Contract No. FC-5441     Food Services for Atlanta Detention Center

Dear Mr. Smith:

This will acknowledge receipt of your correspondence dated January 26, 2017, regarding the referenced matter. Initially, I would like to call your attention to the Notice of Change of Address submitted to your office last April, a copy of which is enclosed. It would be most appreciated if you would change our contact information in your system as requested.

At this time, we must respectfully request that the City approve a price adjustment during the anticipated option year commencing March 1, 2017. Since we first entered into the contract for the food services at the Detention Center in December 2012, the Consumer Price Index, All Items, has increased 5.2% and the Food Away From Home Index has increased 10.3%. We simply cannot continue to provide our services at 2012 rates. Per your correspondence, the City has appropriated funding for the next contract year totaling $1.3MM plus budgeted funds not expended in the prior contract year, which is approximately $190,000. The impact of the requested price increase is estimated at $35,000, bringing the total cost to the City to approximately $1,15MM, well below the available funding of $1.49MM. I have prepared and enclose a new meal price scale reflecting a 3% increase effective March 1, 2017. Please include this new scale in the Resolution extending the term of the Agreement.

Trinity Services sincerely appreciates the opportunity to serve the Atlanta Detention Center. We always strive to exceed our client's expectations and I urge you to call me if you ever have any questions or concerns regarding the food services we provide.

Very truly yours,

Christopher Watt
Vice President Southeast Region



TRINITY SERVICES
GROUP, INC.

**EXHIBIT A**

**INMATE MEAL PRICE SCALE**
**ATLANTA DETENTION CENTER**
**MARCH 1, 2017 TO FEBRUARY 28, 2018**

| INMATE POPULATION | PRICE PER MEAL |
|---|---|
| 425 – 474 | $1.737 |
| 475 – 524 | $1.638 |
| 525 – 574 | $1.550 |
| 575 – 624 | $1.489 |
| 625 – 674 | $1.437 |
| 675 – 724 | $1.389 |
| 725 – 774 | $1.349 |
| 775 – 824 | $1.313 |
| 825 – 874 | $1.282 |



TRINITY SERVICES
GROUP, INC.

April 26, 2016

City of Atlanta
Department of Procurement
Attn: Adam L. Smith, Esq., Chief Procurement Officer
Suite 1790
55 Trinity Avenue, SW
Atlanta, GA 30303

     **Re:**    **FC-5441, Food Services for Atlanta Detention Center**
                **Change of Address**

Dear Mr. Smith:

     Pursuant to Section 19.1 of the referenced Agreement this is to advise that Trinity Services Group, Inc., would like to change its address for communications. Please send all future notices allowed or required to the following:

     Trinity Services Group, Inc.
     Attn: Chief Executive Officer
     477 Commerce Boulevard
     Oldsmar, FL 34677

     With a copy to:

     Stephen A. Hould, Esq.
     General Counsel
     920 Third Street, Suite D
     Neptune Beach, FL 32266

     Thank you for your consideration. Please contact me should you have any questions regarding this request.

     Very truly yours,

     Stephen A. Hould
     General Counsel
     Direct Phone: (904) 247-1305
     Email: lawhould@trinityservicesgroup.com



# CITY OF ATLANTA

Kasim Reed
Mayor

SUITE 1900
55 TRINITY AVENUE, SW
ATLANTA, GA 30303
(404) 330-6204   Fax: (404) 658-7705
Internet Home Page:  www.atlantaga.gov

DEPARTMENT OF PROCUREMENT
Adam L. Smith, Esq., CPPO, CPPB, CPPM, CPP,
CIPC, CISCC, CIGPM, CPPC
Chief Procurement Officer
asmith@atlantaga.gov

January 26, 2017

Mr. Chris Robinson
District Manager
Trinity Services Group, Inc.
5643 Rodney Court
Stone Mountain, GA  30087

**VIA EMAIL: chrisr@trinityservicesgroup.com**

**Re:    FC-5441, Food Services for Atlanta Detention Center (Renewal No. 2)**

Dear Mr. Robinson:

Pursuant to Section 2 of the Agreement, please accept this letter as official notice from the City of Atlanta (the "**City**") that it has exercised its first option to renew the above-referenced Agreement for an additional one (1) year term, pursuant to Resolution No. 17-R-3056, which shall be effective beginning upon the expiration of the prior term of the Agreement, being March 17, 2017, and continue for a period of one year, ending on March 16, 2018.

Additionally, the City has appropriated additional funding for the period of this renewal, being year five (5) of the Agreement, in an amount not to exceed One Million Three Hundred Thousand Dollars and No Cents ($1,300,000.00). This amount will be considered in addition to any unexpended funds from year four (4) of the Agreement, as the "Maximum Payment Amount" defined under the Agreement. Year five (5) funding was expressly authorized by the City, pursuant to Resolution No. 17-R-3056, a copy of which is enclosed for your reference.

Thank you for your continued work with the City of Atlanta.

Sincerely,

Adam L. Smith

ALS/cjs

Enclosure

 

**<u>Exhibit E</u>**

**TRINITY SERVICES GROUP, INC.**

February 12, 2018

City of Atlanta                                    **VIA EMAIL: smgarrett@atlantaga.gov**
Department of Procurement
Attn: Susan M. Garrett, Interim Chief Procurement Officer
55 Trinity Avenue SW, Suite 1900
Atlanta, Georgia 30303

Re: Contract No. FC-5441 - Food Services for Atlanta Detention Center

Dear Ms. Garrett:

        As I am sure you are aware Trinity Services Group's contract to provide Food Services for the Atlanta Detention Center will expire on March 17, 2018.  In light of the City of Atlanta's recent cancellation of the Request for Proposals for the project known as FC-10122, Food Services at the Atlanta Detention Center, this is to propose a short term extension of the existing contract which will allow Trinity Services Group to continue its services pending completion of a new Request for Proposal process.

        Trinity Services Group would be willing to continue the existing contract on a month to month basis, terminable by the City of Atlanta by providing Trinity with not less than thirty (30) days prior notice based on the following interim meal price structure: Inmate meals - $2.308 per meal; Staff meals - $3.00 per meal; and, Catering/Special meals $5.00 per meal.  If this meets with your approval, please proceed with the appropriate legislation to put this interim plan in place. If not, please contact me to discuss transition planning.

        Please feel free to contact me should you have any questions about our proposal.

Very truly yours,

Christopher Watt
Vice President Southeast Region
Cell: (704) 763-6491
EFax: (866) 324-0583
EMail: Chris.watt@trinityservicesgroup.com

**<u>Exhibit F</u>**

CUO550R5



# TRINITY SERVICES GROUP, INC.

# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

**Invoice Number:** 1410600254
**Invoice Date:** 04/06/2018
**Effective Date:** 03/31/2018
**Department:** Monthly Meals Invoices

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|---|---|---|---|---|
| 1410600254 | 2421910 | F141060000 | March 2018 Meals | Atlanta City Detention Center |

**Note:**

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| INMATE MEALS Week Ending 03/01/18 | 1,433 | 1.590000 | 2,278.47 |
| INMATE MEALS Week Ending 03/08/18 | 9,131 | 1.686000 | 15,394.87 |
| INMATE MEALS Week Ending 03/15/18 | 10,214 | 1.590000 | 16,240.26 |
| INMATE MEALS Week Ending 03/22/18 | 9,533 | 2.308000 | 22,002.16 |
| INMATE MEALS Week Ending 03/29/18 | 8,302 | 2.308000 | 19,161.02 |
| INMATE MEALS Week Ending 03/31/18 | 2,114 | 2.308000 | 4,879.11 |
| STAFF MEALS Week Ending 03/01/18 | 172 | 1.590000 | 273.48 |
| STAFF MEALS Week Ending 03/08/18 | 1,230 | 1.686000 | 2,073.78 |
| STAFF MEALS Week Ending 03/15/18 | 1,155 | 1.590000 | 1,836.45 |
| STAFF MEALS Week Ending 03/22/18 | 1,149 | 3.000000 | 3,447.00 |
| STAFF MEALS Week Ending 03/29/18 | 1,555 | 3.000000 | 4,665.00 |
| STAFF MEALS Week Ending 03/31/18 | 445 | 3.000000 | 1,335.00 |
| INMATE MEALS   credit 3/16 @ old scale price $1.686 | 1,343 | -0.622000 | -835.35 |

CU0550R5



# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

**Invoice Number:** 1410600254
**Invoice Date:** 04/06/2018
**Effective Date:** 03/31/2018
**Department:** Monthly Meals Invoices

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|---|---|---|---|---|
| 1410600254 | 2421910 | F141060000 | March 2018 Meals | Atlanta City Detention Center |

**Note:**

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| STAFF MEALS   credit 3/16 @ old scale price $1.686 | 195 | -1.314000 | -256.23 |

| | |
|---|---|
| **Sub-Total** | $92,495.02 |
| **Sales Tax** | $0.00 |
| **Total** | $92,495.02 |
| **Advanced Deposit Used** | $0.00 |
| **Cash Payment** | $0.00 |
| **Credit Card** | $0.00 |
| **Balance** | $92,495.02 |

**Please send a copy of your Invoice with your Payment**

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| INMATE MEALS Week Ending 03/01/18 | $1.59000 | 03/01/18 | INMA | Inmate Meals | | 1,433 | $2,278.47 |
| | | | | | SubTotal | 1,433 | $2,278.47 |
| INMATE MEALS Week Ending 03/08/18 | $1.68600 | 03/02/18 | INMA | Inmate Meals | | 1,307 | $2,203.60 |
| | | 03/03/18 | INMA | Inmate Meals | | 1,298 | $2,188.43 |
| | | 03/04/18 | INMA | Inmate Meals | | 1,402 | $2,363.77 |
| | | 03/05/18 | INMA | Inmate Meals | | 1,331 | $2,244.07 |
| | | 03/06/18 | INMA | Inmate Meals | | 1,239 | $2,088.95 |
| | | 03/07/18 | INMA | Inmate Meals | | 1,245 | $2,099.07 |
| | | 03/08/18 | INMA | Inmate Meals | | 1,309 | $2,206.97 |
| | | | | | SubTotal | 9,131 | $15,394.87 |
| INMATE MEALS Week Ending 03/15/18 | $1.59000 | 03/09/18 | INMA | Inmate Meals | | 1,427 | $2,268.93 |
| | | 03/10/18 | INMA | Inmate Meals | | 1,329 | $2,113.11 |
| | | 03/11/18 | INMA | Inmate Meals | | 1,464 | $2,327.76 |
| | | 03/12/18 | INMA | Inmate Meals | | 1,457 | $2,316.63 |
| | | 03/13/18 | INMA | Inmate Meals | | 1,529 | $2,431.11 |
| | | 03/14/18 | INMA | Inmate Meals | | 1,566 | $2,489.94 |
| | | 03/15/18 | INMA | Inmate Meals | | 1,442 | $2,292.78 |
| | | | | | SubTotal | 10,214 | $16,240.26 |
| INMATE MEALS Week Ending 03/22/18 | $2.30800 | 03/16/18 | INMA | Inmate Meals | | 1,343 | $3,099.64 |
| | | 03/17/18 | INMA | Inmate Meals | | 1,321 | $3,048.87 |
| | | 03/18/18 | INMA | Inmate Meals | | 1,536 | $3,545.09 |
| | | 03/19/18 | INMA | Inmate Meals | | 1,450 | $3,346.60 |
| | | 03/20/18 | INMA | Inmate Meals | | 1,314 | $3,032.71 |
| | | 03/21/18 | INMA | Inmate Meals | | 1,299 | $2,998.09 |
| | | 03/22/18 | INMA | Inmate Meals | | 1,270 | $2,931.16 |
| | | | | | SubTotal | 9,533 | $22,002.16 |
| INMATE MEALS Week Ending 03/29/18 | $2.30800 | 03/23/18 | INMA | Inmate Meals | | 1,195 | $2,758.06 |
| | | 03/24/18 | INMA | Inmate Meals | | 1,229 | $2,836.53 |
| | | 03/25/18 | INMA | Inmate Meals | | 1,273 | $2,938.08 |
| | | 03/26/18 | INMA | Inmate Meals | | 1,214 | $2,801.91 |
| | | 03/27/18 | INMA | Inmate Meals | | 1,162 | $2,681.90 |
| | | 03/28/18 | INMA | Inmate Meals | | 1,149 | $2,651.89 |
| | | 03/29/18 | INMA | Inmate Meals | | 1,080 | $2,492.64 |
| | | | | | SubTotal | 8,302 | $19,161.02 |
| INMATE MEALS Week Ending 03/31/18 | $2.30800 | 03/30/18 | INMA | Inmate Meals | | 1,046 | $2,414.17 |
| | | 03/31/18 | INMA | Inmate Meals | | 1,068 | $2,464.94 |
| | | | | | SubTotal | 2,114 | $4,879.11 |
| STAFF MEALS Week Ending 03/01/18 | $1.59000 | 03/01/18 | STAF | Staff Meals | | 172 | $273.48 |
| | | | | | SubTotal | 172 | $273.48 |
| STAFF MEALS Week Ending 03/08/18 | $1.68600 | 03/02/18 | STAF | Staff Meals | | 173 | $291.68 |
| | | 03/03/18 | STAF | Staff Meals | | 125 | $210.75 |
| | | 03/04/18 | STAF | Staff Meals | | 119 | $200.63 |
| | | 03/05/18 | STAF | Staff Meals | | 192 | $323.71 |
| | | 03/06/18 | STAF | Staff Meals | | 211 | $355.75 |
| | | 03/07/18 | STAF | Staff Meals | | 219 | $369.23 |

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| STAFF MEALS Week Ending 03/08/18 | $1.68600 | 03/08/18 | STAF | Staff Meals | | 191 | $322.03 |
| | | | | | SubTotal | 1,230 | $2,073.78 |
| STAFF MEALS Week Ending 03/15/18 | $1.59000 | 03/09/18 | STAF | Staff Meals | | 181 | $287.79 |
| | | 03/10/18 | STAF | Staff Meals | | 115 | $182.85 |
| | | 03/11/18 | STAF | Staff Meals | | 117 | $186.03 |
| | | 03/12/18 | STAF | Staff Meals | | 179 | $284.61 |
| | | 03/13/18 | STAF | Staff Meals | | 196 | $311.64 |
| | | 03/14/18 | STAF | Staff Meals | | 181 | $287.79 |
| | | 03/15/18 | STAF | Staff Meals | | 186 | $295.74 |
| | | | | | SubTotal | 1,155 | $1,836.45 |
| STAFF MEALS Week Ending 03/22/18 | $3.00000 | 03/16/18 | STAF | Staff Meals | | 195 | $585.00 |
| | | 03/17/18 | STAF | Staff Meals | | 96 | $288.00 |
| | | 03/18/18 | STAF | Staff Meals | | 95 | $285.00 |
| | | 03/19/18 | STAF | Staff Meals | | 183 | $549.00 |
| | | 03/20/18 | STAF | Staff Meals | | 186 | $558.00 |
| | | 03/21/18 | STAF | Staff Meals | | 181 | $543.00 |
| | | 03/22/18 | STAF | Staff Meals | | 213 | $639.00 |
| | | | | | SubTotal | 1,149 | $3,447.00 |
| STAFF MEALS Week Ending 03/29/18 | $3.00000 | 03/23/18 | STAF | Staff Meals | | 218 | $654.00 |
| | | 03/24/18 | STAF | Staff Meals | | 157 | $471.00 |
| | | 03/25/18 | STAF | Staff Meals | | 140 | $420.00 |
| | | 03/26/18 | STAF | Staff Meals | | 208 | $624.00 |
| | | 03/27/18 | STAF | Staff Meals | | 259 | $777.00 |
| | | 03/28/18 | STAF | Staff Meals | | 303 | $909.00 |
| | | 03/29/18 | STAF | Staff Meals | | 270 | $810.00 |
| | | | | | SubTotal | 1,555 | $4,665.00 |
| STAFF MEALS Week Ending 03/31/18 | $3.00000 | 03/30/18 | STAF | Staff Meals | | 274 | $822.00 |
| | | 03/31/18 | STAF | Staff Meals | | 171 | $513.00 |
| | | | | | SubTotal | 445 | $1,335.00 |
| | | | | | Grand Total | 46,433 | $93,586.60 |

CU050RS


**TRINITY SERVICES GROUP, INC.**

# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

| | |
|---|---|
| **Invoice Number:** | 1410600268 |
| **Invoice Date:** | 05/06/2018 |
| **Effective Date:** | 04/30/2018 |
| **Department:** | Monthly Meals Invoices |

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|---|---|---|---|---|
| 1410600268 | 2424066 | F141060000 | Monthly Inv for April 2018 | Atlanta City Detention Center |

Note:

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| INMATE MEALS Week Ending 04/05/18 | 5,760 | 2.308000 | 13,294.08 |
| INMATE MEALS Week Ending 04/12/18 | 12,098 | 2.308000 | 27,922.18 |
| INMATE MEALS Week Ending 04/19/18 | 12,124 | 2.308000 | 27,982.19 |
| INMATE MEALS Week Ending 04/26/18 | 12,581 | 2.308000 | 29,036.95 |
| INMATE MEALS Week Ending 04/30/18 | 7,134 | 2.308000 | 16,465.27 |
| STAFF MEALS Week Ending 04/05/18 | 1,222 | 3.000000 | 3,666.00 |
| STAFF MEALS Week Ending 04/12/18 | 1,857 | 3.000000 | 5,571.00 |
| STAFF MEALS Week Ending 04/19/18 | 1,974 | 3.000000 | 5,922.00 |
| STAFF MEALS Week Ending 04/26/18 | 1,941 | 3.000000 | 5,823.00 |
| STAFF MEALS Week Ending 04/30/18 | 1,031 | 3.000000 | 3,093.00 |

| | |
|---|---|
| **Sub-Total** | $138,775.67 |
| **Sales Tax** | $0.00 |
| **Total** | $138,775.67 |
| **Advanced Deposit Used** | $0.00 |
| **Cash Payment** | $0.00 |
| **Credit Card** | $0.00 |
| **Balance** | $138,775.67 |

**Please send a copy of your Invoice with your Payment**

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| INMATE MEALS Week Ending 04/05/18 | $2.30800 | 04/01/18 | INMA | Inmate Meals | | 1,171 | $2,702.67 |
| | | 04/02/18 | INMA | Inmate Meals | | 1,145 | $2,642.66 |
| | | 04/03/18 | INMA | Inmate Meals | | 1,156 | $2,668.05 |
| | | 04/04/18 | INMA | Inmate Meals | | 1,180 | $2,723.44 |
| | | 04/05/18 | INMA | Inmate Meals | | 1,108 | $2,557.26 |
| | | | | | SubTotal | 5,760 | $13,294.08 |
| INMATE MEALS Week Ending 04/12/18 | $2.30800 | 04/06/18 | INMA | Inmate Meals | | 1,116 | $2,575.73 |
| | | 04/07/18 | INMA | Inmate Meals | | 1,419 | $3,275.05 |
| | | 04/08/18 | INMA | Inmate Meals | | 2,064 | $4,763.71 |
| | | 04/09/18 | INMA | Inmate Meals | | 1,951 | $4,502.91 |
| | | 04/10/18 | INMA | Inmate Meals | | 1,873 | $4,322.88 |
| | | 04/11/18 | INMA | Inmate Meals | | 1,901 | $4,387.51 |
| | | 04/12/18 | INMA | Inmate Meals | | 1,774 | $4,094.39 |
| | | | | | SubTotal | 12,098 | $27,922.18 |
| INMATE MEALS Week Ending 04/19/18 | $2.30800 | 04/13/18 | INMA | Inmate Meals | | 1,719 | $3,967.45 |
| | | 04/14/18 | INMA | Inmate Meals | | 1,687 | $3,893.60 |
| | | 04/15/18 | INMA | Inmate Meals | | 1,781 | $4,110.55 |
| | | 04/16/18 | INMA | Inmate Meals | | 1,766 | $4,075.93 |
| | | 04/17/18 | INMA | Inmate Meals | | 1,673 | $3,861.28 |
| | | 04/18/18 | INMA | Inmate Meals | | 1,712 | $3,951.30 |
| | | 04/19/18 | INMA | Inmate Meals | | 1,786 | $4,122.09 |
| | | | | | SubTotal | 12,124 | $27,982.19 |
| INMATE MEALS Week Ending 04/26/18 | $2.30800 | 04/20/18 | INMA | Inmate Meals | | 1,793 | $4,138.24 |
| | | 04/21/18 | INMA | Inmate Meals | | 1,863 | $4,299.80 |
| | | 04/22/18 | INMA | Inmate Meals | | 1,932 | $4,459.06 |
| | | 04/23/18 | INMA | Inmate Meals | | 1,804 | $4,163.63 |
| | | 04/24/18 | INMA | Inmate Meals | | 1,728 | $3,988.22 |
| | | 04/25/18 | INMA | Inmate Meals | | 1,724 | $3,978.99 |
| | | 04/26/18 | INMA | Inmate Meals | | 1,737 | $4,009.00 |
| | | | | | SubTotal | 12,581 | $29,036.95 |
| INMATE MEALS Week Ending 04/30/18 | $2.30800 | 04/27/18 | INMA | Inmate Meals | | 1,764 | $4,071.31 |
| | | 04/28/18 | INMA | Inmate Meals | | 1,741 | $4,018.23 |
| | | 04/29/18 | INMA | Inmate Meals | | 1,815 | $4,189.02 |
| | | 04/30/18 | INMA | Inmate Meals | | 1,814 | $4,186.71 |
| | | | | | SubTotal | 7,134 | $16,465.27 |
| STAFF MEALS Week Ending 04/05/18 | $3.00000 | 04/01/18 | STAF | Staff Meals | | 187 | $561.00 |
| | | 04/02/18 | STAF | Staff Meals | | 234 | $702.00 |
| | | 04/03/18 | STAF | Staff Meals | | 271 | $813.00 |
| | | 04/04/18 | STAF | Staff Meals | | 267 | $801.00 |
| | | 04/05/18 | STAF | Staff Meals | | 263 | $789.00 |
| | | | | | SubTotal | 1,222 | $3,666.00 |
| STAFF MEALS Week Ending 04/12/18 | $3.00000 | 04/06/18 | STAF | Staff Meals | | 288 | $864.00 |
| | | 04/07/18 | STAF | Staff Meals | | 162 | $486.00 |
| | | 04/08/18 | STAF | Staff Meals | | 186 | $558.00 |
| | | 04/09/18 | STAF | Staff Meals | | 273 | $819.00 |
| | | 04/10/18 | STAF | Staff Meals | | 312 | $936.00 |

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | Count | Amount |
|---|---|---|---|---|---|---|
| STAFF MEALS Week Ending 04/12/18 | $3.00000 | 04/11/18 | STAF | Staff Meals | 334 | $1,002.00 |
| | | 04/12/18 | STAF | Staff Meals | 302 | $906.00 |
| | | | | SubTotal | 1,857 | $5,571.00 |
| STAFF MEALS Week Ending 04/19/18 | $3.00000 | 04/13/18 | STAF | Staff Meals | 306 | $918.00 |
| | | 04/14/18 | STAF | Staff Meals | 207 | $621.00 |
| | | 04/15/18 | STAF | Staff Meals | 189 | $567.00 |
| | | 04/16/18 | STAF | Staff Meals | 313 | $939.00 |
| | | 04/17/18 | STAF | Staff Meals | 305 | $915.00 |
| | | 04/18/18 | STAF | Staff Meals | 308 | $924.00 |
| | | 04/19/18 | STAF | Staff Meals | 346 | $1,038.00 |
| | | | | SubTotal | 1,974 | $5,922.00 |
| STAFF MEALS Week Ending 04/26/18 | $3.00000 | 04/20/18 | STAF | Staff Meals | 326 | $978.00 |
| | | 04/21/18 | STAF | Staff Meals | 137 | $411.00 |
| | | 04/22/18 | STAF | Staff Meals | 187 | $561.00 |
| | | 04/23/18 | STAF | Staff Meals | 315 | $945.00 |
| | | 04/24/18 | STAF | Staff Meals | 323 | $969.00 |
| | | 04/25/18 | STAF | Staff Meals | 336 | $1,008.00 |
| | | 04/26/18 | STAF | Staff Meals | 317 | $951.00 |
| | | | | SubTotal | 1,941 | $5,823.00 |
| STAFF MEALS Week Ending 04/30/18 | $3.00000 | 04/27/18 | STAF | Staff Meals | 307 | $921.00 |
| | | 04/28/18 | STAF | Staff Meals | 219 | $657.00 |
| | | 04/29/18 | STAF | Staff Meals | 193 | $579.00 |
| | | 04/30/18 | STAF | Staff Meals | 312 | $936.00 |
| | | | | SubTotal | 1,031 | $3,093.00 |
| | | | | Grand Total | 57,722 | $138,775.67 |

CU0550R5


TRINITY SERVICES
GROUP, INC.

# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

**Invoice Number:** 1410600285
**Invoice Date:** 06/01/2018
**Effective Date:** 05/31/2018
**Department:** Monthly Meals Invoices

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|---|---|---|---|---|
| 1410600285 | 2426027 | F141060000 | monthly billing | Atlanta City Detention Center |

**Note:**

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| INMATE MEALS Week Ending 05/03/18 | 4,033 | 2.308000 | 9,308.16 |
| INMATE MEALS Week Ending 05/10/18 | 9,821 | 2.308000 | 22,666.87 |
| INMATE MEALS Week Ending 05/17/18 | 9,701 | 2.308000 | 22,389.91 |
| INMATE MEALS Week Ending 05/24/18 | 10,049 | 2.308000 | 23,193.09 |
| INMATE MEALS Week Ending 05/31/18 | 9,780 | 2.308000 | 22,572.24 |
| STAFF MEALS Week Ending 05/03/18 | 742 | 3.000000 | 2,226.00 |
| STAFF MEALS Week Ending 05/10/18 | 1,100 | 3.000000 | 3,300.00 |
| STAFF MEALS Week Ending 05/17/18 | 1,489 | 3.000000 | 4,467.00 |
| STAFF MEALS Week Ending 05/24/18 | 1,497 | 3.000000 | 4,491.00 |
| STAFF MEALS Week Ending 05/31/18 | 1,512 | 3.000000 | 4,536.00 |

| | |
|---|---|
| **Sub-Total** | $119,150.27 |
| **Sales Tax** | $0.00 |
| **Total** | $119,150.27 |
| **Advanced Deposit Used** | $0.00 |
| **Cash Payment** | $0.00 |
| **Credit Card** | $0.00 |
| **Balance** | $119,150.27 |

**Please send a copy of your Invoice with your Payment**

## Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| INMATE MEALS Week Ending 05/03/18 | $2.30800 | 05/01/18 | INMA | Inmate Meals | | 1,423 | $3,284.28 |
| | | 05/02/18 | INMA | Inmate Meals | | 1,291 | $2,979.63 |
| | | 05/03/18 | INMA | Inmate Meals | | 1,319 | $3,044.25 |
| | | | | | SubTotal | 4,033 | $9,308.16 |
| INMATE MEALS Week Ending 05/10/18 | $2.30800 | 05/04/18 | INMA | Inmate Meals | | 1,407 | $3,247.36 |
| | | 05/05/18 | INMA | Inmate Meals | | 1,321 | $3,048.87 |
| | | 05/06/18 | INMA | Inmate Meals | | 1,489 | $3,436.61 |
| | | 05/07/18 | INMA | Inmate Meals | | 1,482 | $3,420.46 |
| | | 05/08/18 | INMA | Inmate Meals | | 1,392 | $3,212.74 |
| | | 05/09/18 | INMA | Inmate Meals | | 1,375 | $3,173.50 |
| | | 05/10/18 | INMA | Inmate Meals | | 1,355 | $3,127.34 |
| | | | | | SubTotal | 9,821 | $22,666.87 |
| INMATE MEALS Week Ending 05/17/18 | $2.30800 | 05/11/18 | INMA | Inmate Meals | | 1,388 | $3,203.50 |
| | | 05/12/18 | INMA | Inmate Meals | | 1,311 | $3,025.79 |
| | | 05/13/18 | INMA | Inmate Meals | | 1,408 | $3,249.66 |
| | | 05/14/18 | INMA | Inmate Meals | | 1,437 | $3,316.60 |
| | | 05/15/18 | INMA | Inmate Meals | | 1,389 | $3,205.81 |
| | | 05/16/18 | INMA | Inmate Meals | | 1,403 | $3,238.12 |
| | | 05/17/18 | INMA | Inmate Meals | | 1,365 | $3,150.42 |
| | | | | | SubTotal | 9,701 | $22,389.91 |
| INMATE MEALS Week Ending 05/24/18 | $2.30800 | 05/18/18 | INMA | Inmate Meals | | 1,426 | $3,291.21 |
| | | 05/19/18 | INMA | Inmate Meals | | 1,439 | $3,321.21 |
| | | 05/20/18 | INMA | Inmate Meals | | 1,476 | $3,406.61 |
| | | 05/21/18 | INMA | Inmate Meals | | 1,520 | $3,508.16 |
| | | 05/22/18 | INMA | Inmate Meals | | 1,439 | $3,321.21 |
| | | 05/23/18 | INMA | Inmate Meals | | 1,423 | $3,284.28 |
| | | 05/24/18 | INMA | Inmate Meals | | 1,326 | $3,060.41 |
| | | | | | SubTotal | 10,049 | $23,193.09 |
| INMATE MEALS Week Ending 05/31/18 | $2.30800 | 05/25/18 | INMA | Inmate Meals | | 1,323 | $3,053.48 |
| | | 05/26/18 | INMA | Inmate Meals | | 1,359 | $3,136.57 |
| | | 05/27/18 | INMA | Inmate Meals | | 1,459 | $3,367.37 |
| | | 05/28/18 | INMA | Inmate Meals | | 1,451 | $3,348.91 |
| | | 05/29/18 | INMA | Inmate Meals | | 1,421 | $3,279.67 |
| | | 05/30/18 | INMA | Inmate Meals | | 1,362 | $3,143.50 |
| | | 05/31/18 | INMA | Inmate Meals | | 1,405 | $3,242.74 |
| | | | | | SubTotal | 9,780 | $22,572.24 |
| STAFF MEALS Week Ending 05/03/18 | $3.00000 | 05/01/18 | STAF | Staff Meals | | 338 | $1,014.00 |
| | | 05/02/18 | STAF | Staff Meals | | 217 | $651.00 |
| | | 05/03/18 | STAF | Staff Meals | | 187 | $561.00 |
| | | | | | SubTotal | 742 | $2,226.00 |
| STAFF MEALS Week Ending 05/10/18 | $3.00000 | 05/04/18 | STAF | Staff Meals | | 242 | $726.00 |
| | | 05/05/18 | STAF | Staff Meals | | 153 | $459.00 |
| | | 05/06/18 | STAF | Staff Meals | | 145 | $435.00 |
| | | 05/07/18 | STAF | Staff Meals | | 181 | $543.00 |
| | | 05/08/18 | STAF | Staff Meals | | 39 | $117.00 |
| | | 05/09/18 | STAF | Staff Meals | | 152 | $456.00 |

## Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| STAFF MEALS Week Ending 05/10/18 | $3.00000 | 05/10/18 | STAF | Staff Meals | | 188 | $564.00 |
| | | | | | SubTotal | 1,100 | $3,300.00 |
| STAFF MEALS Week Ending 05/17/18 | $3.00000 | 05/11/18 | STAF | Staff Meals | | 186 | $558.00 |
| | | 05/12/18 | STAF | Staff Meals | | 191 | $573.00 |
| | | 05/13/18 | STAF | Staff Meals | | 144 | $432.00 |
| | | 05/14/18 | STAF | Staff Meals | | 179 | $537.00 |
| | | 05/15/18 | STAF | Staff Meals | | 250 | $750.00 |
| | | 05/16/18 | STAF | Staff Meals | | 265 | $795.00 |
| | | 05/17/18 | STAF | Staff Meals | | 274 | $822.00 |
| | | | | | SubTotal | 1,489 | $4,467.00 |
| STAFF MEALS Week Ending 05/24/18 | $3.00000 | 05/18/18 | STAF | Staff Meals | | 212 | $636.00 |
| | | 05/19/18 | STAF | Staff Meals | | 143 | $429.00 |
| | | 05/20/18 | STAF | Staff Meals | | 145 | $435.00 |
| | | 05/21/18 | STAF | Staff Meals | | 232 | $696.00 |
| | | 05/22/18 | STAF | Staff Meals | | 267 | $801.00 |
| | | 05/23/18 | STAF | Staff Meals | | 273 | $819.00 |
| | | 05/24/18 | STAF | Staff Meals | | 225 | $675.00 |
| | | | | | SubTotal | 1,497 | $4,491.00 |
| STAFF MEALS Week Ending 05/31/18 | $3.00000 | 05/25/18 | STAF | Staff Meals | | 235 | $705.00 |
| | | 05/26/18 | STAF | Staff Meals | | 202 | $606.00 |
| | | 05/27/18 | STAF | Staff Meals | | 163 | $489.00 |
| | | 05/28/18 | STAF | Staff Meals | | 198 | $594.00 |
| | | 05/29/18 | STAF | Staff Meals | | 244 | $732.00 |
| | | 05/30/18 | STAF | Staff Meals | | 238 | $714.00 |
| | | 05/31/18 | STAF | Staff Meals | | 232 | $696.00 |
| | | | | | SubTotal | 1,512 | $4,536.00 |
| | | | | | Grand Total | 49,724 | $119,150.27 |

CU055095



# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

| | |
|---|---|
| **Invoice Number:** | 1410600291 |
| **Invoice Date:** | 07/06/2018 |
| **Effective Date:** | 06/30/2018 |
| **Department:** | Monthly Meals Invoices |

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|---|---|---|---|---|
| 1410600291 | 2428461 | F141060000 | June 2018 Billing | Atlanta City Detention Center |

**Note:**

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| INMATE MEALS Week Ending 06/07/18 | 9,825 | 2.308000 | 22,676.10 |
| INMATE MEALS Week Ending 06/14/18 | 9,080 | 2.308000 | 20,956.64 |
| INMATE MEALS Week Ending 06/21/18 | 8,890 | 2.308000 | 20,518.12 |
| INMATE MEALS Week Ending 06/28/18 | 8,301 | 2.308000 | 19,158.71 |
| INMATE MEALS Week Ending 06/30/18 | 2,172 | 2.308000 | 5,012.98 |
| STAFF MEALS Week Ending 06/07/18 | 1,610 | 3.000000 | 4,830.00 |
| STAFF MEALS Week Ending 06/14/18 | 1,557 | 3.000000 | 4,671.00 |
| STAFF MEALS Week Ending 06/21/18 | 1,557 | 3.000000 | 4,671.00 |
| STAFF MEALS Week Ending 06/28/18 | 1,599 | 3.000000 | 4,797.00 |
| STAFF MEALS Week Ending 06/30/18 | 411 | 3.000000 | 1,233.00 |

| | |
|---|---|
| **Sub-Total** | $108,524.55 |
| **Sales Tax** | $0.00 |
| **Total** | $108,524.55 |
| **Advanced Deposit Used** | $0.00 |
| **Cash Payment** | $0.00 |
| **Credit Card** | $0.00 |
| **Balance** | $108,524.55 |

**Please send a copy of your Invoice with your Payment**

## Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| INMATE MEALS Week Ending 06/07/18 | $2.30800 | 06/01/18 | INMA | Inmate Meals | | 1,352 | $3,120.42 |
| | | 06/02/18 | INMA | Inmate Meals | | 1,415 | $3,265.82 |
| | | 06/03/18 | INMA | Inmate Meals | | 1,435 | $3,311.98 |
| | | 06/04/18 | INMA | Inmate Meals | | 1,457 | $3,362.76 |
| | | 06/05/18 | INMA | Inmate Meals | | 1,380 | $3,185.04 |
| | | 06/06/18 | INMA | Inmate Meals | | 1,436 | $3,314.29 |
| | | 06/07/18 | INMA | Inmate Meals | | 1,350 | $3,115.80 |
| | | | | | SubTotal | 9,825 | $22,676.10 |
| INMATE MEALS Week Ending 06/14/18 | $2.30800 | 06/08/18 | INMA | Inmate Meals | | 1,279 | $2,951.93 |
| | | 06/09/18 | INMA | Inmate Meals | | 1,262 | $2,912.70 |
| | | 06/10/18 | INMA | Inmate Meals | | 1,358 | $3,134.26 |
| | | 06/11/18 | INMA | Inmate Meals | | 1,374 | $3,171.19 |
| | | 06/12/18 | INMA | Inmate Meals | | 1,246 | $2,875.77 |
| | | 06/13/18 | INMA | Inmate Meals | | 1,283 | $2,961.16 |
| | | 06/14/18 | INMA | Inmate Meals | | 1,278 | $2,949.62 |
| | | | | | SubTotal | 9,080 | $20,956.64 |
| INMATE MEALS Week Ending 06/21/18 | $2.30800 | 06/15/18 | INMA | Inmate Meals | | 1,247 | $2,878.08 |
| | | 06/16/18 | INMA | Inmate Meals | | 1,272 | $2,935.78 |
| | | 06/17/18 | INMA | Inmate Meals | | 1,330 | $3,069.64 |
| | | 06/18/18 | INMA | Inmate Meals | | 1,310 | $3,023.48 |
| | | 06/19/18 | INMA | Inmate Meals | | 1,274 | $2,940.39 |
| | | 06/20/18 | INMA | Inmate Meals | | 1,233 | $2,845.76 |
| | | 06/21/18 | INMA | Inmate Meals | | 1,224 | $2,824.99 |
| | | | | | SubTotal | 8,890 | $20,518.12 |
| INMATE MEALS Week Ending 06/28/18 | $2.30800 | 06/22/18 | INMA | Inmate Meals | | 1,226 | $2,829.61 |
| | | 06/23/18 | INMA | Inmate Meals | | 1,217 | $2,808.84 |
| | | 06/24/18 | INMA | Inmate Meals | | 1,284 | $2,963.47 |
| | | 06/25/18 | INMA | Inmate Meals | | 1,187 | $2,739.60 |
| | | 06/26/18 | INMA | Inmate Meals | | 1,178 | $2,718.82 |
| | | 06/27/18 | INMA | Inmate Meals | | 1,124 | $2,594.19 |
| | | 06/28/18 | INMA | Inmate Meals | | 1,085 | $2,504.18 |
| | | | | | SubTotal | 8,301 | $19,158.71 |
| INMATE MEALS Week Ending 06/30/18 | $2.30800 | 06/29/18 | INMA | Inmate Meals | | 1,089 | $2,513.41 |
| | | 06/30/18 | INMA | Inmate Meals | | 1,083 | $2,499.56 |
| | | | | | SubTotal | 2,172 | $5,012.98 |
| STAFF MEALS Week Ending 06/07/18 | $3.00000 | 06/01/18 | STAF | Staff Meals | | 267 | $801.00 |
| | | 06/02/18 | STAF | Staff Meals | | 206 | $618.00 |
| | | 06/03/18 | STAF | Staff Meals | | 171 | $513.00 |
| | | 06/04/18 | STAF | Staff Meals | | 237 | $711.00 |
| | | 06/05/18 | STAF | Staff Meals | | 257 | $771.00 |
| | | 06/06/18 | STAF | Staff Meals | | 235 | $705.00 |
| | | 06/07/18 | STAF | Staff Meals | | 237 | $711.00 |
| | | | | | SubTotal | 1,610 | $4,830.00 |
| STAFF MEALS Week Ending 06/14/18 | $3.00000 | 06/08/18 | STAF | Staff Meals | | 256 | $768.00 |
| | | 06/09/18 | STAF | Staff Meals | | 165 | $495.00 |
| | | 06/10/18 | STAF | Staff Meals | | 164 | $492.00 |

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| STAFF MEALS Week Ending 06/14/18 | $3.00000 | 06/11/18 | STAF | Staff Meals | | 241 | $723.00 |
| | | 06/12/18 | STAF | Staff Meals | | 241 | $723.00 |
| | | 06/13/18 | STAF | Staff Meals | | 232 | $696.00 |
| | | 06/14/18 | STAF | Staff Meals | | 258 | $774.00 |
| | | | | | SubTotal | 1,557 | $4,671.00 |
| STAFF MEALS Week Ending 06/21/18 | $3.00000 | 06/15/18 | STAF | Staff Meals | | 215 | $645.00 |
| | | 06/16/18 | STAF | Staff Meals | | 207 | $621.00 |
| | | 06/17/18 | STAF | Staff Meals | | 152 | $456.00 |
| | | 06/18/18 | STAF | Staff Meals | | 235 | $705.00 |
| | | 06/19/18 | STAF | Staff Meals | | 252 | $756.00 |
| | | 06/20/18 | STAF | Staff Meals | | 254 | $762.00 |
| | | 06/21/18 | STAF | Staff Meals | | 242 | $726.00 |
| | | | | | SubTotal | 1,557 | $4,671.00 |
| STAFF MEALS Week Ending 06/28/18 | $3.00000 | 06/22/18 | STAF | Staff Meals | | 259 | $777.00 |
| | | 06/23/18 | STAF | Staff Meals | | 205 | $615.00 |
| | | 06/24/18 | STAF | Staff Meals | | 180 | $540.00 |
| | | 06/25/18 | STAF | Staff Meals | | 234 | $702.00 |
| | | 06/26/18 | STAF | Staff Meals | | 278 | $834.00 |
| | | 06/27/18 | STAF | Staff Meals | | 219 | $657.00 |
| | | 06/28/18 | STAF | Staff Meals | | 224 | $672.00 |
| | | | | | SubTotal | 1,599 | $4,797.00 |
| STAFF MEALS Week Ending 06/30/18 | $3.00000 | 06/29/18 | STAF | Staff Meals | | 228 | $684.00 |
| | | 06/30/18 | STAF | Staff Meals | | 183 | $549.00 |
| | | | | | SubTotal | 411 | $1,233.00 |
| | | | | | Grand Total | 45,002 | $108,524.55 |

CU0500R5

 **TRINITY SERVICES GROUP, INC.**

# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

| | |
|---|---|
| **Invoice Number:** | 1410600296 |
| **Invoice Date:** | 08/03/2018 |
| **Effective Date:** | 07/31/2018 |
| **Department:** | Monthly Meals Invoices |

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|---|---|---|---|---|
| 1410600296 | 2430443 | F141060000 | Monthly Billy July 2018 | Atlanta City Detention Center |

**Note:**

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| INMATE MEALS Week Ending 07/05/18 | 5,384 | 2.308000 | 12,426.27 |
| INMATE MEALS Week Ending 07/12/18 | 6,877 | 2.308000 | 15,872.12 |
| INMATE MEALS Week Ending 07/19/18 | 6,021 | 2.308000 | 13,896.47 |
| INMATE MEALS Week Ending 07/26/18 | 5,403 | 2.308000 | 12,470.12 |
| INMATE MEALS Week Ending 07/31/18 | 3,476 | 2.308000 | 8,022.61 |
| STAFF MEALS Week Ending 07/05/18 | 999 | 3.000000 | 2,997.00 |
| STAFF MEALS Week Ending 07/12/18 | 1,497 | 3.000000 | 4,491.00 |
| STAFF MEALS Week Ending 07/19/18 | 1,421 | 3.000000 | 4,263.00 |
| STAFF MEALS Week Ending 07/26/18 | 1,458 | 3.000000 | 4,374.00 |
| STAFF MEALS Week Ending 07/31/18 | 1,016 | 3.000000 | 3,048.00 |

| | |
|---|---|
| **Sub-Total** | $81,860.59 |
| **Sales Tax** | $0.00 |
| **Total** | $81,860.59 |
| **Advanced Deposit Used** | $0.00 |
| **Cash Payment** | $0.00 |
| **Credit Card** | $0.00 |
| **Balance** | $81,860.59 |

**Please send a copy of your Invoice with your Payment**

## Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | Count | Amount |
|---|---|---|---|---|---|---|
| INMATE MEALS Week Ending 07/05/18 | $2.30800 | 07/01/18 | INMA | Inmate Meals | 1,115 | $2,573.42 |
| | | 07/02/18 | INMA | Inmate Meals | 1,068 | $2,464.94 |
| | | 07/03/18 | INMA | Inmate Meals | 1,027 | $2,370.32 |
| | | 07/04/18 | INMA | Inmate Meals | 1,045 | $2,411.86 |
| | | 07/05/18 | INMA | Inmate Meals | 1,129 | $2,605.73 |
| | | | | SubTotal | 5,384 | $12,426.27 |
| INMATE MEALS Week Ending 07/12/18 | $2.30800 | 07/06/18 | INMA | Inmate Meals | 1,054 | $2,432.63 |
| | | 07/07/18 | INMA | Inmate Meals | 971 | $2,241.07 |
| | | 07/08/18 | INMA | Inmate Meals | 1,064 | $2,455.71 |
| | | 07/09/18 | INMA | Inmate Meals | 980 | $2,261.84 |
| | | 07/10/18 | INMA | Inmate Meals | 963 | $2,222.60 |
| | | 07/11/18 | INMA | Inmate Meals | 932 | $2,151.06 |
| | | 07/12/18 | INMA | Inmate Meals | 913 | $2,107.20 |
| | | | | SubTotal | 6,877 | $15,872.12 |
| INMATE MEALS Week Ending 07/19/18 | $2.30800 | 07/13/18 | INMA | Inmate Meals | 902 | $2,081.82 |
| | | 07/14/18 | INMA | Inmate Meals | 910 | $2,100.28 |
| | | 07/15/18 | INMA | Inmate Meals | 930 | $2,146.44 |
| | | 07/16/18 | INMA | Inmate Meals | 898 | $2,072.58 |
| | | 07/17/18 | INMA | Inmate Meals | 794 | $1,832.55 |
| | | 07/18/18 | INMA | Inmate Meals | 810 | $1,869.48 |
| | | 07/19/18 | INMA | Inmate Meals | 777 | $1,793.32 |
| | | | | SubTotal | 6,021 | $13,896.47 |
| INMATE MEALS Week Ending 07/26/18 | $2.30800 | 07/20/18 | INMA | Inmate Meals | 788 | $1,818.70 |
| | | 07/21/18 | INMA | Inmate Meals | 737 | $1,701.00 |
| | | 07/22/18 | INMA | Inmate Meals | 865 | $1,996.42 |
| | | 07/23/18 | INMA | Inmate Meals | 823 | $1,899.48 |
| | | 07/24/18 | INMA | Inmate Meals | 729 | $1,682.53 |
| | | 07/25/18 | INMA | Inmate Meals | 764 | $1,763.31 |
| | | 07/26/18 | INMA | Inmate Meals | 697 | $1,608.68 |
| | | | | SubTotal | 5,403 | $12,470.12 |
| INMATE MEALS Week Ending 07/31/18 | $2.30800 | 07/27/18 | INMA | Inmate Meals | 706 | $1,629.45 |
| | | 07/28/18 | INMA | Inmate Meals | 715 | $1,650.22 |
| | | 07/29/18 | INMA | Inmate Meals | 714 | $1,647.91 |
| | | 07/30/18 | INMA | Inmate Meals | 680 | $1,569.44 |
| | | 07/31/18 | INMA | Inmate Meals | 661 | $1,525.59 |
| | | | | SubTotal | 3,476 | $8,022.61 |
| STAFF MEALS Week Ending 07/05/18 | $3.00000 | 07/01/18 | STAF | Staff Meals | 105 | $315.00 |
| | | 07/02/18 | STAF | Staff Meals | 253 | $759.00 |
| | | 07/03/18 | STAF | Staff Meals | 249 | $747.00 |
| | | 07/04/18 | STAF | Staff Meals | 162 | $486.00 |
| | | 07/05/18 | STAF | Staff Meals | 230 | $690.00 |
| | | | | SubTotal | 999 | $2,997.00 |
| STAFF MEALS Week Ending 07/12/18 | $3.00000 | 07/06/18 | STAF | Staff Meals | 258 | $774.00 |
| | | 07/07/18 | STAF | Staff Meals | 167 | $501.00 |
| | | 07/08/18 | STAF | Staff Meals | 191 | $573.00 |
| | | 07/09/18 | STAF | Staff Meals | 212 | $636.00 |

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| STAFF MEALS Week Ending 07/12/18 | $3.00000 | 07/10/18 | STAF | Staff Meals | | 211 | $633.00 |
| | | 07/11/18 | STAF | Staff Meals | | 224 | $672.00 |
| | | 07/12/18 | STAF | Staff Meals | | 234 | $702.00 |
| | | | | | SubTotal | 1,497 | $4,491.00 |
| STAFF MEALS Week Ending 07/19/18 | $3.00000 | 07/13/18 | STAF | Staff Meals | | 246 | $738.00 |
| | | 07/14/18 | STAF | Staff Meals | | 159 | $477.00 |
| | | 07/15/18 | STAF | Staff Meals | | 161 | $483.00 |
| | | 07/16/18 | STAF | Staff Meals | | 213 | $639.00 |
| | | 07/17/18 | STAF | Staff Meals | | 217 | $651.00 |
| | | 07/18/18 | STAF | Staff Meals | | 231 | $693.00 |
| | | 07/19/18 | STAF | Staff Meals | | 194 | $582.00 |
| | | | | | SubTotal | 1,421 | $4,263.00 |
| STAFF MEALS Week Ending 07/26/18 | $3.00000 | 07/20/18 | STAF | Staff Meals | | 221 | $663.00 |
| | | 07/21/18 | STAF | Staff Meals | | 140 | $420.00 |
| | | 07/22/18 | STAF | Staff Meals | | 152 | $456.00 |
| | | 07/23/18 | STAF | Staff Meals | | 225 | $675.00 |
| | | 07/24/18 | STAF | Staff Meals | | 252 | $756.00 |
| | | 07/25/18 | STAF | Staff Meals | | 259 | $777.00 |
| | | 07/26/18 | STAF | Staff Meals | | 209 | $627.00 |
| | | | | | SubTotal | 1,458 | $4,374.00 |
| STAFF MEALS Week Ending 07/31/18 | $3.00000 | 07/27/18 | STAF | Staff Meals | | 206 | $618.00 |
| | | 07/28/18 | STAF | Staff Meals | | 152 | $456.00 |
| | | 07/29/18 | STAF | Staff Meals | | 178 | $534.00 |
| | | 07/30/18 | STAF | Staff Meals | | 233 | $699.00 |
| | | 07/31/18 | STAF | Staff Meals | | 247 | $741.00 |
| | | | | | SubTotal | 1,016 | $3,048.00 |
| | | | | | Grand Total | 33,552 | $81,860.59 |

CU0550R5



# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

| | |
|---|---|
| **Invoice Number:** | 1410600307 |
| **Invoice Date:** | 09/07/2018 |
| **Effective Date:** | 08/31/2018 |
| **Department:** | Monthly Meals Invoices |

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|---|---|---|---|---|
| 1410600307 | 2433005 | F141060000 | Monthly Billing August | Atlanta City Detention Center |

**Note:**

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| INMATE MEALS Week Ending 08/02/18 | 1,290 | 2.308000 | 2,977.32 |
| INMATE MEALS Week Ending 08/09/18 | 4,553 | 2.308000 | 10,508.32 |
| INMATE MEALS Week Ending 08/16/18 | 4,289 | 2.308000 | 9,899.01 |
| INMATE MEALS Week Ending 08/23/18 | 3,676 | 2.308000 | 8,484.21 |
| INMATE MEALS Week Ending 08/30/18 | 3,430 | 2.308000 | 7,916.44 |
| INMATE MEALS Week Ending 08/31/18 | 471 | 2.308000 | 1,087.07 |
| STAFF MEALS Week Ending 08/02/18 | 507 | 3.000000 | 1,521.00 |
| STAFF MEALS Week Ending 08/09/18 | 1,470 | 3.000000 | 4,410.00 |
| STAFF MEALS Week Ending 08/16/18 | 1,325 | 3.000000 | 3,975.00 |
| STAFF MEALS Week Ending 08/23/18 | 1,274 | 3.000000 | 3,822.00 |
| STAFF MEALS Week Ending 08/30/18 | 1,271 | 3.000000 | 3,813.00 |
| STAFF MEALS Week Ending 08/31/18 | 213 | 3.000000 | 639.00 |

| | |
|---|---|
| **Sub-Total** | $59,052.37 |
| **Sales Tax** | $0.00 |
| **Total** | $59,052.37 |
| **Advanced Deposit Used** | $0.00 |
| **Cash Payment** | $0.00 |
| **Credit Card** | $0.00 |
| **Balance** | $59,052.37 |

**Please send a copy of your Invoice with your Payment**

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| INMATE MEALS Week Ending 08/02/18 | $2.30800 | 08/01/18 | INMA | Inmate Meals | | 664 | $1,532.51 |
| | | 08/02/18 | INMA | Inmate Meals | | 626 | $1,444.81 |
| | | | | | SubTotal | 1,290 | $2,977.32 |
| INMATE MEALS Week Ending 08/09/18 | $2.30800 | 08/03/18 | INMA | Inmate Meals | | 630 | $1,454.04 |
| | | 08/04/18 | INMA | Inmate Meals | | 610 | $1,407.88 |
| | | 08/05/18 | INMA | Inmate Meals | | 681 | $1,571.75 |
| | | 08/06/18 | INMA | Inmate Meals | | 651 | $1,502.51 |
| | | 08/07/18 | INMA | Inmate Meals | | 650 | $1,500.20 |
| | | 08/08/18 | INMA | Inmate Meals | | 653 | $1,507.12 |
| | | 08/09/18 | INMA | Inmate Meals | | 678 | $1,564.82 |
| | | | | | SubTotal | 4,553 | $10,508.32 |
| INMATE MEALS Week Ending 08/16/18 | $2.30800 | 08/10/18 | INMA | Inmate Meals | | 670 | $1,546.36 |
| | | 08/11/18 | INMA | Inmate Meals | | 591 | $1,364.03 |
| | | 08/12/18 | INMA | Inmate Meals | | 651 | $1,502.51 |
| | | 08/13/18 | INMA | Inmate Meals | | 641 | $1,479.43 |
| | | 08/14/18 | INMA | Inmate Meals | | 588 | $1,357.10 |
| | | 08/15/18 | INMA | Inmate Meals | | 598 | $1,380.18 |
| | | 08/16/18 | INMA | Inmate Meals | | 550 | $1,269.40 |
| | | | | | SubTotal | 4,289 | $9,899.01 |
| INMATE MEALS Week Ending 08/23/18 | $2.30800 | 08/17/18 | INMA | Inmate Meals | | 552 | $1,274.02 |
| | | 08/18/18 | INMA | Inmate Meals | | 555 | $1,280.94 |
| | | 08/19/18 | INMA | Inmate Meals | | 593 | $1,368.64 |
| | | 08/20/18 | INMA | Inmate Meals | | 521 | $1,202.47 |
| | | 08/21/18 | INMA | Inmate Meals | | 487 | $1,124.00 |
| | | 08/22/18 | INMA | Inmate Meals | | 491 | $1,133.23 |
| | | 08/23/18 | INMA | Inmate Meals | | 477 | $1,100.92 |
| | | | | | SubTotal | 3,676 | $8,484.21 |
| INMATE MEALS Week Ending 08/30/18 | $2.30800 | 08/24/18 | INMA | Inmate Meals | | 500 | $1,154.00 |
| | | 08/25/18 | INMA | Inmate Meals | | 460 | $1,061.68 |
| | | 08/26/18 | INMA | Inmate Meals | | 507 | $1,170.16 |
| | | 08/27/18 | INMA | Inmate Meals | | 482 | $1,112.46 |
| | | 08/28/18 | INMA | Inmate Meals | | 484 | $1,117.07 |
| | | 08/29/18 | INMA | Inmate Meals | | 505 | $1,165.54 |
| | | 08/30/18 | INMA | Inmate Meals | | 492 | $1,135.54 |
| | | | | | SubTotal | 3,430 | $7,916.44 |
| INMATE MEALS Week Ending 08/31/18 | $2.30800 | 08/31/18 | INMA | Inmate Meals | | 471 | $1,087.07 |
| | | | | | SubTotal | 471 | $1,087.07 |
| STAFF MEALS Week Ending 08/02/18 | $3.00000 | 08/01/18 | STAF | Staff Meals | | 235 | $705.00 |
| | | 08/02/18 | STAF | Staff Meals | | 272 | $816.00 |
| | | | | | SubTotal | 507 | $1,521.00 |
| STAFF MEALS Week Ending 08/09/18 | $3.00000 | 08/03/18 | STAF | Staff Meals | | 242 | $726.00 |
| | | 08/04/18 | STAF | Staff Meals | | 150 | $450.00 |
| | | 08/05/18 | STAF | Staff Meals | | 171 | $513.00 |
| | | 08/06/18 | STAF | Staff Meals | | 217 | $651.00 |
| | | 08/07/18 | STAF | Staff Meals | | 236 | $708.00 |

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | | Count | Amount |
|---|---|---|---|---|---|---|---|
| STAFF MEALS Week Ending 08/09/18 | $3.00000 | 08/08/18 | STAF | Staff Meals | | 225 | $675.00 |
| | | 09/09/18 | STAF | Staff Meals | | 229 | $687.00 |
| | | | | | SubTotal | 1,470 | $4,410.00 |
| STAFF MEALS Week Ending 08/16/18 | $3.00000 | 08/10/18 | STAF | Staff Meals | | 219 | $657.00 |
| | | 08/11/18 | STAF | Staff Meals | | 150 | $450.00 |
| | | 08/12/18 | STAF | Staff Meals | | 132 | $396.00 |
| | | 08/13/18 | STAF | Staff Meals | | 205 | $615.00 |
| | | 08/14/18 | STAF | Staff Meals | | 208 | $624.00 |
| | | 08/15/18 | STAF | Staff Meals | | 220 | $660.00 |
| | | 08/16/18 | STAF | Staff Meals | | 191 | $573.00 |
| | | | | | SubTotal | 1,325 | $3,975.00 |
| STAFF MEALS Week Ending 08/23/18 | $3.00000 | 08/17/18 | STAF | Staff Meals | | 201 | $603.00 |
| | | 08/18/18 | STAF | Staff Meals | | 132 | $396.00 |
| | | 08/19/18 | STAF | Staff Meals | | 144 | $432.00 |
| | | 08/20/18 | STAF | Staff Meals | | 192 | $576.00 |
| | | 08/21/18 | STAF | Staff Meals | | 204 | $612.00 |
| | | 08/22/18 | STAF | Staff Meals | | 215 | $645.00 |
| | | 08/23/18 | STAF | Staff Meals | | 186 | $558.00 |
| | | | | | SubTotal | 1,274 | $3,822.00 |
| STAFF MEALS Week Ending 08/30/18 | $3.00000 | 08/24/18 | STAF | Staff Meals | | 187 | $561.00 |
| | | 08/25/18 | STAF | Staff Meals | | 126 | $378.00 |
| | | 08/26/18 | STAF | Staff Meals | | 131 | $393.00 |
| | | 08/27/18 | STAF | Staff Meals | | 203 | $609.00 |
| | | 08/28/18 | STAF | Staff Meals | | 196 | $588.00 |
| | | 08/29/18 | STAF | Staff Meals | | 233 | $699.00 |
| | | 08/30/18 | STAF | Staff Meals | | 195 | $585.00 |
| | | | | | SubTotal | 1,271 | $3,813.00 |
| STAFF MEALS Week Ending 08/31/18 | $3.00000 | 08/31/18 | STAF | Staff Meals | | 213 | $639.00 |
| | | | | | SubTotal | 213 | $639.00 |
| | | | | | Grand Total | 23,769 | $59,052.37 |

CU0550R5



# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

| | |
|---|---|
| **Invoice Number:** | 1410600312 |
| **Invoice Date:** | 09/17/2018 |
| **Effective Date:** | 09/17/2018 |
| **Department:** | Reimbursements-notax |

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|---|---|---|---|---|
| 1410600312 | 2433696 | F141060000 | Purchase of Final Inventory | Atlanta City Detention Center |

**Note:**

| Description | | Quantity | Unit Price | Amount |
|---|---|---|---|---|
| Reimbursement | Bakery | 1 | 297.970000 | 297.97 |
| Reimbursement | Meat | 1 | 2,136.990000 | 2,136.99 |
| Reimbursement | Frozen Food | 1 | 607.040000 | 607.04 |
| Reimbursement | Fresh Produce | 1 | 28.980000 | 28.98 |
| Reimbursement | Grocery | 1 | 2,207.600000 | 2,207.60 |
| Reimbursement | Paper | 1 | 1,648.540000 | 1,648.54 |
| Reimbursement | Beverage | 1 | 4,449.840000 | 4,449.84 |
| Reimbursement | Dairy | 1 | 165.660000 | 165.66 |
| Reimbursement | Can Foods | 1 | 611.340000 | 611.34 |
| Reimbursement | Cleaning Supplies | 1 | 928.480000 | 928.48 |
| Reimbursement | ODR/Special Events/Trinity To Go | 1 | 2,329.220000 | 2,329.22 |

| | |
|---|---|
| **Sub-Total** | $15,411.66 |
| **Sales Tax** | $0.00 |
| **Total** | $15,411.66 |
| **Advanced Deposit Used** | $0.00 |
| **Cash Payment** | $0.00 |
| **Credit Card** | $0.00 |
| **Balance** | $15,411.66 |

**Please send a copy of your Invoice with your Payment**

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | Count | Amount |
|---|---|---|---|---|---|---|
| | | | | Grand Total | 0 | $0.00 |

CU0550R5



# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

| | |
|---|---|
| **Invoice Number:** | 1410600314 |
| **Invoice Date:** | 09/19/2018 |
| **Effective Date:** | 09/19/2018 |
| **Department:** | Monthly Meals Invoices |

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|---|---|---|---|---|
| 1410600314 | 2433769 | F141060000 | monthly meals/final invoice | Atlanta City Detention Center |

**Note:**

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| INMATE MEALS   9/1/to 9/16/2018 | 7,525 | 2.308000 | 17,367.70 |
| STAFF MEALS   9/1 to 9/16/2018 | 2,405 | 3.000000 | 7,215.00 |

| | |
|---|---|
| **Sub-Total** | $24,582.70 |
| **Sales Tax** | $0.00 |
| **Total** | $24,582.70 |
| **Advanced Deposit Used** | $0.00 |
| **Cash Payment** | $0.00 |
| **Credit Card** | $0.00 |
| **Balance** | $24,582.70 |

**Please send a copy of your Invoice with your Payment**

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | Count | Amount |
|---|---|---|---|---|---|---|
| | | | | Grand Total | 0 | $0.00 |

CU0550R5


# TRINITY SERVICES GROUP, INC.

# Invoice

Atlanta City Detention Center
254 Peachtree St. SW
ATLANTA, GA 30303

**Invoice Number:** 1410600313
**Invoice Date:** 09/18/2018
**Effective Date:** 09/18/2018
**Department:** Smallwares

**Bill To:** Atlanta City Detention Center
68 Mitchell St. SW
Suite 6100

ATLANTA, GA 30335

**Remit To:** Trinity Services Group, Inc.
62836 Collection Center Drive
Chicago, IL 60693-0628

| Event ID | Transaction ID | Customer Number | Event | Location |
|----------|----------------|-----------------|-------|----------|
| 1410600313 | 2433729 | F141060000 | Smallware Items Purchase | Atlanta City Detention Center |

**Note:** per 9/17 email

| Description | Quantity | Unit Price | Amount |
|-------------|----------|------------|--------|
| Coffee Machine   w/2 coffee pots | 1 | 200.000000 | 200.00 |
| Coffee Urn | 2 | 20.000000 | 40.00 |
| Heat Lamps   (Dual 2) | 1 | 200.000000 | 200.00 |
| Beverage Containers   (Orange and Blue) | 1 | 290.000000 | 290.00 |
| Knife Box   (Large) | 1 | 500.000000 | 500.00 |
| Waffle Irons | 1 | 300.000000 | 300.00 |

|  |  |
|--|--|
| **Sub-Total** | $1,530.00 |
| **Sales Tax** | $0.00 |
| **Total** | $1,530.00 |
| **Advanced Deposit Used** | $0.00 |
| **Cash Payment** | $0.00 |
| **Credit Card** | $0.00 |
| **Balance** | $1,530.00 |

**Please send a copy of your Invoice with your Payment**

# Trinity Services Group
## Atlanta City Detention Center

| Description | Price | Date | Meal | Meal Description | Count | Amount |
|---|---|---|---|---|---|---|
| **Grand Total** | | | | | 0 | $0.00 |

**<u>Exhibit G</u>**

| Invoice Date | Invoice # | Invoice Amount | Balance Due |
|---|---|---|---|
| 2/24/2017 | 1410600060 | $136.04 | $136.04 |
| 3/3/2017 | 1410600068 | $128.88 | $128.88 |
| 3/3/2017 | 1410600060 ADD FOR COMM 021717 | $34.01 | $34.01 |
| 3/3/2017 | 1410600068 ADD DUE TO TTO COMM ERROR | $32.22 | $32.22 |
| 3/3/2017 | 1410600060 ADD 2 SALES TAX | $13.68 | $13.68 |
| 3/3/2017 | 1410600068 2 ASS S TAX AND PPM ADJ | $12.96 | $12.96 |
| 3/3/2017 | 14106000079 REV 2 | $116.52 | $116.52 |
| 3/9/2017 | 1410600088 REV 2 | $126.23 | $126.23 |
| 3/17/2017 | 1410600092 REV 2 | $223.33 | $223.33 |
| 3/31/2017 | 1410600098 | $301.01 | $301.01 |
| 1/5/2018 | 1410600226 | $71.08 | $71.08 |
| 2/15/2018 | 1410600237 | $168.36 | $168.36 |
| 3/2/2018 | 1410600242 | $1,000.00 | $1,000.00 |
| 3/9/2018 | 1410600243 | $1,000.00 | $1,000.00 |
| 3/9/2018 | 1410600244 | $1,000.00 | $1,000.00 |
| 3/16/2018 | 1410600245 | $1,000.00 | $1,000.00 |
| 3/23/2018 | 1410600247 | $1,000.00 | $1,000.00 |
| 3/23/2018 | 1410600248 | $1,000.00 | $1,000.00 |
| 3/23/2018 | 1410600249 | $1,400.00 | $1,000.00 |
| 3/30/2018 | 1410600250 | $1,000.00 | $1,000.00 |
| 3/30/2018 | 1410600251 | $1,000.00 | $1,000.00 |
| 4/6/2018 | 1410600254 | $92,495.02 | $15,959.73 |
| 4/13/2018 | 1410600257 | $1,000.00 | $1,000.00 |
| 5/6/2018 | 1410600268 | $138,775.67 | $51,059.50 |
| 5/6/2018 | 1410600269 | $55.63 | $55.63 |
| 5/18/2018 | 1410600279 | $1,000.00 | $1,000.00 |
| 5/18/2018 | 1410600280 | $1,000.00 | $1,000.00 |
| 6/1/2018 | 1410600285 | $119,150.27 | $36,888.95 |
| 6/8/2018 | 1410600286 | $341.60 | $194.36 |
| 7/6/2018 | 1410600291 | $108,524.55 | $33,297.64 |
| 7/10/2018 | 1410600293 | $8,500.00 | $8,500.00 |
| 8/3/2018 | 1410600296 | $81,860.59 | $25,905.45 |
| 9/7/2018 | 1410600307 | $59,052.37 | $19,559.60 |
| 9/19/2018 | 1410600314 | $24,582.70 | $8,071.60 |
| | | | **$212,856.78** |